**Kelvin HIGHSMITH; Marcita Highsmith and Joseph B. Villasenor, Plaintiffs,**

v.

**CHRYSLER CREDIT CORPORATION, Defendant.**

No. 92 C 475.

United States District Court, N.D. Illinois, E.D.

Feb. 10, 1993.

---

Lynne M. Raimondo, Victoria R. Collado, Mayer, Brown & Platt, Chicago, IL, for defendant.

Daniel A. Edelman, Cathleen M. Combs, Tara G. Redmond, J. Eric Vander Arend, Francine Schwartz, Law Offices of Daniel A. Edelman, Michael B. Hyman, Much Shelist Freed Denenberg & Ament, P.C., Chicago, IL, for plaintiffs.

### MEMORANDUM, OPINION AND ORDER

ANDERSEN, District Judge.

This case is before the court on the motion of defendant Chrysler Credit Corporation ("Chrysler Credit") to dismiss the amended complaint of plaintiffs Kelvin Highsmith, Marcita Highsmith and Joseph Villasenor pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons discussed in this memorandum opinion and order, the motion to dismiss is granted.

## BACKGROUND

Plaintiffs have filed this action under the federal Consumer Leasing Act, 15 U.S.C. § 1667, the Illinois Consumer Fraud and Deceptive Practices Act, Ill.Rev.Stat., ch. 121½, para. 261, the Michigan Consumer Protection Act, Mich.Comp.L.Ann. § 445.-901, and the common law doctrine of unlawful penalties. The amended complaint seeks damages and other relief based on Chrysler Credit's alleged disclosure violations and imposition of unreasonable charges for default and early termination of consumer automobile leases. Plaintiffs seek to represent a purported class of persons who have entered into leases with Chrysler Credit.

The Highsmiths entered into a lease with Chrysler Credit on March 10, 1987 for a 1987 Plymouth Sundance. The lease term was 48 months and required the Highsmiths to make monthly payments to Chrysler Credit in the amount of $254.03. Over the course of the lease, they were to pay Chrysler Credit a total of $12,193.49. On September 21, 1988, the Highsmiths filed a Chapter 13 bankruptcy petition listing Chrysler Credit as a creditor. Chrysler Credit filed a Proof of Claim stating that the Highsmiths were indebted to it for $432.66.

On January 26, 1989, the Bankruptcy Court entered an agreed order rejecting the lease agreement and modifying the automatic stay to allow Chrysler Credit to retake possession of the leased car. After repossessing and selling the car, Chrysler Credit filed an Amended Proof of Claim against the Highsmiths seeking to recover the $5,429.49 allegedly due under the lease agreement as a result of the Highsmiths' default and early termination. A second Amended Proof of Claim, giving a different address for payments, was also filed. The Highsmiths never objected to the Proof of Claim or the Amended Proofs of Claim.

On February 6, 1991, Judge Ginsburg of the Bankruptcy Court dismissed the Highsmiths' case for material default under 11 U.S.C. § 1307(c)(6). Chrysler Credit then filed suit against the Highsmiths in the Circuit Court of Cook County to recover the $5,429.49 deficiency, since a dismissal for material default does not discharge the debtor's obligations. The Highsmiths responded with a counterclaim alleging that the lease agreement violated the Consumer Leasing Act, the Illinois Consumer Fraud Act, and Illinois common law.

Sometime thereafter, the Highsmiths also refiled their bankruptcy petition. Upon learning of the Highsmiths' second Chapter 13 case, Chrysler Credit voluntarily dismissed the Circuit Court action in compliance with the automatic stay imposed by Section 362 of the Bankruptcy Code. Chrysler Credit never filed a proof of claim in the Highsmiths' renewed Chapter 13 proceeding. However, the Highsmiths filed a proof of claim on Chrysler Credit's behalf, seeking to pursue their Consumer Leasing Act and Illinois Consumer Fraud Act claims. The Highsmiths then objected to the claim that they had initiated and, on October 31, 1991, filed an adversary proceeding in the bankruptcy court alleging that they were not liable to Chrysler Credit because of the alleged violations of federal and state law. Chrysler Credit responded by filing a motion, which Judge Ginsburg granted, seeking a determination that the Highsmiths' adversary proceeding was a noncore proceeding. The dispute then came before this court.

Mr. Villasenor entered into a lease with Chrysler Credit on December 17, 1990 for a 1991 Plymouth automobile. The lease term was 48 months and required Villasenor to make monthly payments to Chrysler Credit in the amount of $338.17. Over the course of the lease, he was to pay Chrysler Credit a total of $16,232.16. This lease has not yet been terminated, and Villasenor seeks a determination that he is entitled to terminate the lease before its scheduled expiration without paying early termination charges because the early termination charges assessed by Chrysler Credit are unlawful.

■ The Consumer Leasing Act is part of the federal legislation commonly known as the Truth in Lending Act ("TILA") 15 U.S.C. §§ 1601–1693r (1982). TILA is a comprehensive regulatory scheme enacted

to govern the consumer credit industry, and it aids unsophisticated consumers in determining total costs of financing. *Thomka v. A.Z. Chevrolet, Inc.*, 619 F.2d 246, 248 (3d Cir.1980).

The TILA sections applicable to consumer leases are known as the Consumer Leasing Act. 15 U.S.C. §§ 1667–1667e. TILA's damage provisions contained in section 1640 are applicable to claims under the Consumer Leasing Act by § 1667d. Two provisions of the Consumer Leasing Act govern plaintiffs' federal claims in this case. First is the provision mandating "clear and conspicuous" disclosure of various lease terms, including "the amount or method of determining any penalty or other charge for delinquency, default, late payments, or early termination." 15 U.S.C. § 1667a. Second is the provision governing liability on expiration or termination of a lease. Section 1667b of the Act provides that any charges for delinquency, default or early termination specified in a lease must be reasonable "in light of the anticipated or actual harm caused by the delinquency, default, or early termination, the difficulties of proof of loss, and the inconvenience or nonfeasibility of otherwise obtaining an adequate remedy."

The amended complaint is divided into five counts, the first three of which are based on the provisions of the Consumer Leasing Act. Count I, which is brought on behalf of the entire class, alleges that Chrysler Credit's standard lease form violates section 1667b by imposing unreasonable charges on lessees who default or terminate their leases early. Count II, also a class claim, alleges that the lease violates the disclosure requirements of section 1667a, as well as the Federal Reserve Board's implementing regulations, commonly known as Regulation M, 12 C.F.R. § 213 *et seq.* Count III is an individual claim, brought on behalf of the Highsmiths, challenging Chrysler Credit's alleged failure to disclose items required under Regulation M.

Counts IV and V are brought on behalf of the class and are based on state law. Count IV alleges that the early termination charges in the Highsmith and Villasenor leases are unenforceable penalties under state law. Finally, Count V alleges that the leases violate the Illinois Consumer Fraud Act and the Michigan Consumer Protection Act.

## DISCUSSION

■■■ In considering a motion to dismiss, the court must accept as true all the well-pleaded material facts in the complaint and must draw all reasonable inferences from those facts in the light most favorable to the plaintiff. *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir.1991). Further, the complaint should not be dismissed unless it appears, beyond a doubt, that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### I. *Counts I, II, and III—Statute Of Limitations On Highsmith's Claims*

Chrysler Credit argues that the Highsmith's claims under Counts I, II, and III are barred by the statute of limitations. We agree. The statute of limitations for actions brought under the Consumer Leasing Act is one year from the date on which the lease agreement is terminated. 15 U.S.C. § 1667d(c). The Highsmith's lease was terminated on January 26, 1989 when the Bankruptcy Court entered an agreed order rejecting the lease, which allowed Chrysler Credit to retake possession of the car. Thus, the Highsmith's challenges to Chrysler Credit's lease should have been brought by January 26, 1990. The Highsmiths, however, did not commence their adversary proceeding until October 29, 1991. Therefore, the Highsmith's claims under Counts I, II, and III are time-barred and must be dismissed.

■■■ The Highsmiths, however, argue that their action is exempt from the one-year limitations period because 15 U.S.C. § 1640(e) provides in relevant part:

This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year

from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

This provision, however, is inapplicable in this case. The Highsmith's action is not being asserted as a "matter of defense" in an "action to collect the debt" or for purposes of recoupment or set-off. It was the Highsmiths as plaintiffs, not Chrysler Credit, who filed this five-count action and who initiated the Proof of Claim in the renewed Chapter 13 proceeding in Bankruptcy Court. This action cannot be characterized as a "defense" to a collection action. To allow the Highsmiths to circumvent the one-year limitations period, would be to allow every lessee in a chapter 13 proceeding to skirt section 1667d(c) by filing a proof of claim that the lessor has no intention of pursuing on its own and then defending that claim with an untimely Consumer Leasing Act complaint. For these reasons, the Highsmiths' claims under Counts I, II, and III are dismissed.

## II. *Counts I and IV—Villasenor's Standing To Challenge Early Termination Charges*

Chrysler Credit next claims that Villasenor has no standing to challenge the reasonableness of Chrysler Credit's early termination charges in Counts I and IV because Villasenor has not defaulted on his lease, and no early termination charges have been assessed against him. Chrysler Credit argues that Villasenor cannot show that the early termination charges were unreasonable in light of Chrysler Credit's actual damages when he has not terminated his lease.

Villasenor argues that he has the right to obtain a declaratory judgment adjudicating that the early termination provisions are unreasonable in advance of engaging in conduct which would trigger liability for early termination penalties. Villasenor contends that, as a party to a contract, he is entitled to a declaration of the legal consequences of a termination of that contract before actually terminating it.

Most courts which have examined this issue have held that in order to mount a section 1667b(b) challenge to the reasonableness of early termination charges, the potential plaintiff must have had those charges assessed against him or her. *See, e.g., Kedziora v. Citicorp National Services, Inc.,* 780 F.Supp. 516 (N.D.Ill.1991); *Simon v. World Omni Leasing, Inc.,* No. 91-0896-AH-M (S.D.Ala. July 13, 1992). In *Kedziora,* the plaintiffs sought to challenge the reasonableness of an automobile lease provision addressing liability for a lessee's termination within the first twelve months of the lease term. The claim was dismissed for lack of standing because the twelve-month provision was never applied to the *Kedziora* plaintiffs. In his opinion, Judge Shadur held that "a plaintiff bringing a claim under Section 1667b(b) has no standing to litigate the reasonableness of a lease provision that caused him or her no actual injury because it never became applicable to him or her." 780 F.Supp. at 523.

In *Simon,* the defendants moved to dismiss the plaintiffs' § 1667b(b) challenge to the early termination charges on the ground that the plaintiffs lacked standing because they had not terminated their lease. In its decision, the court discussed the interplay between the Article III standing requirements and the Declaratory Judgment Act, 28 U.S.C. § 2201. The court concluded that the plaintiffs could not obtain a declaratory judgment that the early termination provisions in their lease were unreasonable. The court therefore dismissed the plaintiffs' challenge to the early termination charges.

Article III of the Constitution vests the federal judiciary with its power to decide matters before it and confines the federal courts to adjudicating actual cases and controversies. *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 476, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990). To invoke the jurisdiction of a federal court, "a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (quoting *Allen v. Wright,* 468 U.S. 737, 750–51,

104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)). To establish an Article III case or controversy:

> a litigant must first clearly demonstrate that he has suffered an "injury in fact." That injury, we have emphasized repeatedly, must be concrete in both a qualitative and temporal sense. The complainant must allege an injury to himself that is "distinct and palpable," ... and the alleged harm must be actual or imminent, not "conjectural" or "hypothetical".

*Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990) (citations omitted).

■ We find that Villasenor lacks Article III standing to challenge the reasonableness of Chrysler Credit's early termination charges. As the *Simon* court held:

> Although it may be true that fear of incurring early termination charges which the [plaintiffs] deem to be unreasonable constrains their willingness to terminate the lease early, their abstract fear is not the sort of distinct and palpable injury necessary to vest this Court with jurisdiction over their § 1667b(b) claim. While the asserted injury in this case is not by any means entirely hypothetical, for there is no reason to doubt that early termination by the [plaintiffs] will in fact result in their being assessed the early termination charges called for by the lease, yet the asserted injury is not actual or imminent because the [plaintiffs] have not even pled a desire to terminate their lease.

*Simon*, slip op. at p. 9 (citation omitted).

Villasenor attempts to by-pass the issue of standing by arguing that he should be allowed to challenge Chrysler Credit's early termination charges as a declaratory judgment action. However, the Declaratory Judgment Act does not obviate the constitutional requirement of a valid case or controversy. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40, 57 S.Ct. 461, 463, 81 L.Ed. 617 (1937). Since the Declaratory Judgment Act does not expand federal jurisdiction, we may only grant declaratory relief in a case of actual controversy within our jurisdiction. *See* 28 U.S.C.

§ 2201. To grant declaratory relief in a case such as this one where there is a lack of standing and a lack of jurisdiction would be wholly inappropriate.

Moreover even apart from the constitutional limitation of the court's power, practical considerations also prevent Villasenor from bringing a section 1667b(b) claim. The issue before this court is not whether Villasenor can terminate his lease without incurring liability since the contract is clear that Villasenor cannot default on his contract without incurring some liability to Chrysler Credit. Rather, the issue is how much early termination liability Villasenor would incur and whether that amount is reasonable compared to the harm Chrysler Credit would suffer from such an early termination. Neither of these issues can be addressed in the abstract.

■ Under the Consumer Leasing Act, early termination charges must be reasonable "in light of the anticipated or actual harm caused by the delinquency, default, or early termination...." 15 U.S.C. § 1667b(b). Until the lease is terminated, the court has no means of determining what harm might befall the lessor and no way of determining whether the lessor's formula is reasonable. The *Simon* court found this a compelling reason to deny standing to lessees who had not ended their lease, and we agree. As the *Simon* court explained:

> The defendant correctly points out that an evaluation of the reasonableness of the termination charges involves, among other things, comparing World Omni's actual damages resulting from early termination with the early termination charges called for by the contract. 15 U.S.C. § 1667b(b). This cannot take place until the [plaintiffs'] lease has been early terminated, the charges have been assessed, and the actual damages have been calculated. The Court cannot determine with certainty *ex ante* whether those actual damages would be more or less than the early termination charges called for by the lease signed by the [plaintiffs]. Accordingly, the Court is unable to determine at this point whether

there would be any injury under Section 1667b(b) even if some action which has not yet occurred, early termination by the [plaintiffs], occurs.

*Simon,* slip op. at pp. 11–12. In this case, as in *Simon,* it is not possible to determine the reasonableness of Chrysler Credit's early termination charges in comparison with its actual damages because Villasenor has not terminated his lease. Accordingly, Villasenor has no standing to assert the section 1667b(b) claim set forth in Count I and that count should be dismissed in its entirety.

Count IV alleges that Chrysler Credit's early termination formula constitutes an unenforceable penalty under state law. The standard for determining whether Chrysler Credit's early termination charges are unenforceable penalties under state law is the same test used to determine whether the charges are reasonable under TILA— whether the challenged charges are reasonable in light of the anticipated or actual damages suffered by Chrysler Credit. *See Yockey v. Horn,* 880 F.2d 945, 953–54 (7th Cir.1989); *Kedziora,* 780 F.Supp. at 532. Thus, if the early termination charges on a given lease reasonably approximate Chrysler Credit's actual damages from the early termination, the charges are valid and enforceable. Villasenor cannot show that the early termination charges were unreasonable in light of Chrysler Credit's actual damages because Villasenor has not terminated his lease, has not been assessed early termination charges, and Chrysler Credit has not suffered any actual damages from the non-existent termination. Thus, Villasenor's state law claim in Count IV, like his TILA claim, is premature and must be dismissed for lack of standing.

### III. *Count II—Inadequate Disclosure*

Chrysler next argues that plaintiffs' claim for disclosure violations under § 1667a fails to state a claim as a matter of law. Plaintiffs allege three disclosure violations: 1) the lease fails to clearly and

conspicuously disclose early termination charges as required by TILA because the Estimated End of Term Wholesale Value is not disclosed in the proximity of the charge; 2) the lease does not adequately disclose the termination formula because it discloses a liability on early termination that is in excess of the maximum amount which is legally collectable from the lessee; 3) the lease disclaims implied warranties where the Magnuson Moss Consumer Warranty Act prohibits a disclaimer. We will address each of these possible violations in turn.

### A. Disclosure of Estimated End of Term Wholesale Value

Plaintiffs allege that the leases fail to clearly and conspicuously disclose early termination charges as required by TILA because the Estimated End of Term Wholesale Value is not disclosed "in the proximity of the charge." Chrysler Credit argues that the first page of the Highsmith and Villasenor leases clearly state the Estimated End of Term Wholesale Value as $3,754 and $6,825.60 respectively. Moreover, Chrysler Credit claims that there is no requirement that factors included in the early termination charge be disclosed "in the proximity" of the charge. Chrysler Credit cites Reg. M. commentary § 213.4(a) ¶ 3 and *Kedziora,* 780 F.Supp. 516, 529 in support of its argument that the regulations expressly allow cross-referencing.

Plaintiffs' allegations fail to state a claim under Section 1667a. There is no requirement in either the statute or in Regulation M that all components of the lessor's formula for determining early termination charges appear right next to one another in the lease. On the contrary, the Federal Reserve Board's Official Staff Commentary to Regulation M expressly permits the lessor to utilize cross-referencing. "In making disclosures lessors may cross-reference rather than repeat items that are disclosed elsewhere in the lease disclosure statement." 12 C.F.R. Part 213, Supp. I, p. 298 (1990).[1]

---

1. The Supreme Court has held that the Federal Reserve Board's official staff commentaries are entitled to substantial weight in interpreting the provisions of TILA. *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 567–68, 100 S.Ct. 790, 798, 63 L.Ed.2d 22 (1980).

Both the Highsmith and Villasenor leases explain that the Estimated End of Term Wholesale Value is "shown of the front of this Lease" where it is clearly established as such. Although the reader is required to turn to page one of the lease, when he does so, the Estimated End of Term Wholesale Value amount is clearly stated. This is enough to satisfy Regulation M. *See Kedziora,* 780 F.Supp. at 529.

### B. Overstatement of Legal Liability

In paragraph 31(b) of the amended complaint, plaintiffs attempt an end-run around the statute of limitations and standing problems by recasting their unreasonableness claim under § 1667b(b) as a disclosure violation under Section 1667a. Plaintiffs allege that their leases disclose "a liability on early termination that is in excess of the maximum amount which is legally collectable from the lessee" in violation of § 1667a.

By presenting this argument, plaintiffs attempt to make their "reasonableness" claim under § 1667b into a "disclosure" claim under § 1667a. Plaintiffs have simply realleged their argument to appear as though it is a disclosure violation under § 1667a. To cure the "nondisclosure" of which plaintiffs complain, Chrysler Credit would be required to put language in the leases stating that "the formula for determining your liability if you default or terminate early is unreasonable and therefore violates federal law." The Consumer Leasing Act does not require this. Moreover, "Regulation M permits disclosure of 'methods or amounts' and does not require disclosure of *effects.*" *Kedziora,* 780 F.Supp. at 530. Therefore, this claim must be dismissed.

### C. Warranty Disclosure

 Plaintiffs claim that Chrysler has failed to make adequate disclosure of any express warranties and guarantees as required by Reg. M § 213.4(g)(7). The amended complaint also claims that the lease violates TILA disclosure requirements because it disclaims implied warranties where the Magnuson Moss Consumer Warranty Act prohibits such disclaimers.

Regulation M requires that the lessor identify express warranties and guarantees made by the manufacturer. 12 C.F.R. § 213.4(g)(7). According to plaintiffs, no identification of the manufacturer's various express warranties is provided in these leases. However, the Federal Reserve Board has explained that "the statement identifying warranties may be brief. For example, manufacturer's warranties may be identified simply by a reference to the standard manufacturer's warranty." Official Staff Commentary to Regulation M, 12 C.F.R. Part 213, Supp. I, p. 300 (1990).

The Villasenor lease[2] at paragraph G states that:

> The vehicle may be subject to a separate written warranty from the manufacturer. Under this Lease, however, there is no warranty, either expressed or implied, as to the merchantability, suitability or fitness for a particular purpose of the vehicle. This means that there is no promise that the vehicle will be fit for use for any particular purpose or even that it will be fit for the normal purpose for which the vehicle is used. No substitution of vehicles is allowed unless agreed to in writing by you.

We find that the leases fully comply with Regulation M since they identify a "separate written warranty from the manufacturer."

Plaintiffs additionally claim that Chrysler Credit's leases convey the impression that there is no implied warranty of merchantability or fitness when the manufacturer actually provides numerous warranties. The leases, however, state that there is no implied warranty under *the lease,* but they do not say that the manufacturer does not make any such warranty. No reasonable lessee could interpret this provision in the leases as a disclaimer of warranties available from the manufacturer—it simply tells the lessee that the lease itself creates no implied warranties. Therefore, we find that each lease adequately communicates that the lessee is getting all the protections that the manufacturer ordinarily accords to vehicle buyers, and no additional protec-

---

**2.** The Highsmith lease is identical except the phrase "from the manufacturer" is deleted.

tions from the lessor. Thus, this claim must be dismissed.

## IV. Count V—Highsmith Illinois Consumer Fraud Act Claims

Count V is brought under the Illinois Consumer Fraud and Deceptive Business Practices Act, commonly known as the Consumer Fraud Act ("CFA"), Ill.Rev.Stat. ch. 121½, para. 261 *et seq.* Chrysler Credit argues that the Highsmith's claim under the CFA is barred by the statute of limitations. We agree.

Section 10a(e) of the CFA provides that a claim is barred unless it is commenced within three years after the cause of action accrues. Ill.Rev.Stat. ch. 121½, para. 270a(e). In this case, there is a dispute as to when the Highsmith's cause of action accrued. Chrysler Credit claims that their action accrued on March 10, 1987, the date on which they signed the lease. The Highsmiths claim that their cause of action did not accrue until April 25, 1989, when early termination charges were assessed against them and they suffered damage. This action was filed in October, 1991.

Chrysler Credit relies on the case of *Van Gessel v. Folds*, 210 Ill.App.3d 403, 155 Ill.Dec. 141, 569 N.E.2d 141 (1991). In that case, the court held that the CFA cause of action arising out of misrepresentations in connection with the sale of a home accrued on the date the home was conveyed to the plaintiff. *Id.* 155 Ill.Dec. at 144, 569 N.E.2d at 144. The *Van Gessel* court also held that "[i]f a plaintiff discovers his cause of action or injuries within the limitations period and still has reasonable time in which to file suit, then the discovery rule does not apply and the plaintiff must file suit within the normal limitations period." *Id.* In that case, the court held that the plaintiff's claim accrued in November, 1980 when he entered into the contract, and the limitations period expired in November, 1983. Plaintiff admittedly discovered the alleged fraud in January, 1983. Therefore, since the plaintiff had ten months in which to file suit before the limitations period expired, the cause of action was barred.

The Highsmiths argue that a cause of action under the CFA does not accrue until the consumer suffers adverse pecuniary impact from the defendant's fraudulent or deceptive conduct. They argue that the early termination provision in the Chrysler Credit lease did not have any adverse pecuniary impact on them until April 25, 1989, when early termination charges were assessed against them. However, *Van Gessel* held that a cause of action for fraud in the sale of a home accrued on the date the sale took place, even though the plaintiff did not discover the damage until several years later. *Id.*

The Highsmiths argue that they could not have discovered the allegedly deceptive aspects of their lease until it was terminated and Chrysler Credit sought to impose default charges against them. However, the "discovery rule" will not save the Highsmith's claim. Under the CFA, "if a plaintiff discovers his cause of action or injuries within the limitations period and still has reasonable time in which to file suit, then the discovery rule does not apply and the plaintiff must file suit within the normal limitations period." *Id.*

In this case, the Highsmiths were assessed early termination charges by Chrysler Credit on April 25, 1989, when Chrysler Credit filed its Amended Proof of Claim in the Highsmith's first bankruptcy proceeding. Therefore, the Highsmiths knew the full extent of their injury on that date. At that point, the Highsmiths still had almost one year in which to bring their CFA claim, but they failed to do so. Just like the plaintiff in *Van Gessel*, who discovered his cause of action ten months before the three-year limitations period expired, but did not bring suit on time, the Highsmith's claims are barred.

The Highsmiths argue that CFA § 10a(a), Ill.Rev.Stat., ch. 121–½, para. 270a(a), makes adverse impact on the claimant an essential element of a cause of action because that section contains the words "suffers damage". Therefore, the Highsmiths argue that until Chrysler Credit's early termination charges have had some adverse pecuniary impact, the cause

of action has not accrued. However, we believe that damage is not an essential element of a CFA claim. The statute itself provides as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act" … in the conduct of any trade or commerce are hereby declared unlawful *whether any person has in fact been misled, deceived or damaged thereby* ….

Ill.Rev.Stat., ch. 121–½, para. 262 (emphasis added). Therefore, the Highsmith's argument that a cause of action does not accrue until the early termination charges have had adverse pecuniary impact must be rejected. Thus, the Highsmith's claims under Count V for violations of the Illinois CFA are dismissed.

### V. *Count V—Michigan Consumer Protection Act Claims*

Under Count V, plaintiffs also contend that the Michigan Consumer Protection Act, ("MCPA"), Mich.Comp.L.Ann. sec. 445.901 *et seq.* applies to the entire class because Chrysler Credit is headquartered in Michigan. The MCPA provides in part:

> Sec. 11. (1) Whether or not he seeks damages or has an adequate remedy at law, a person may bring an action to do either or both of the following:
>
> (a) Obtain a declaratory judgment that a method, act, or practice is unlawful under section 3.
>
> (b) Enjoin in accordance with the principles of equity a person who is engaging or is about to engage in a method, act, or practice which is unlawful under section 3.
>
> (2) Except in a class action, a person who suffers loss as a result of a violation of this act may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorneys' fees.
>
> (3) A person who suffers loss as a result of a violation of this act may bring a class action on behalf of persons *residing or injured in this state* for the actual damages caused by any of the following …

Mich.Comp.L.Ann. sec. 445.911. (emphasis added).

The Michigan Act only allows class actions to be brought on behalf of persons residing or injured in Michigan. Since neither the Highsmiths nor Mr. Villasenor was injured or resides in Michigan, they are not proper class representatives for the only class of persons authorized by the Michigan Act. Plaintiffs argue that subdivision (1) of section 11 of the MCPA authorizes class actions for injunctive relief and declaratory relief. We find plaintiffs' interpretation of the statute to be in error, and we believe that subdivision (3) controls class actions. Therefore, plaintiffs may not rely upon the MCPA.

Plaintiffs next attempt to fall under the statute by arguing that a person who remits money to a business headquartered in Michigan is "injured" in Michigan and that Chrysler Credit's receipt of ill-gotten gains in Michigan causes injury to consumers residing elsewhere. Plaintiffs go too far in stretching the definition of "injured." Plaintiffs' interpretation would read the limitation of "residing or injured in this state" in subsection (3) out of the statute by permitting plaintiffs in all 50 states to bring class actions under the Michigan Act. The Michigan legislature has limited class actions under the MCPA to suits brought by persons "residing or injured in" Michigan. Merely transmitting money to Michigan does not amount to being "injured" in that state.

In addition, plaintiffs cannot bring suit under the MCPA because their leases, in paragraph T, contain a choice of law clause specifying that "[t]he law at the place of signing this Lease will govern." Since both leases were signed in Illinois,

this provision requires that Illinois law will govern. Under Illinois law, such choice of law provisions will be honored if the law chosen bears some relationship to the forum and the parties or the transaction, subject to public policy considerations. *See, e.g., Potomac Leasing Co. v. Chuck's Pub, Inc.,* 156 Ill.App.3d 755, 109 Ill.Dec. 90, 92–93, 509 N.E.2d 751, 753–54 (1987). In this case, the choice of law provision should be followed because all lessees reside in Illinois and the leases were signed in Illinois. Therefore, the law chosen bears "some relationship to the forum and the parties or the transaction."

 Finally, even if the leases did not contain express choice of law provisions, we would apply Illinois law because Illinois is the state with the most significant relationship to the contract and the state where performance was to occur. *See United Thermal Industries, Inc. v. Asbestos Training & Employment, Inc.,* 920 F.2d 1345, 1348 (7th Cir.1990). Both the Highsmiths and Mr. Villasenor are Illinois residents, and both leases were executed in Illinois. Moreover, the subject matter of both leases, the leased automobiles, were kept in Illinois.

For all of the foregoing reasons, the MCPA does not apply to this case, and the MCPA portion of Count V of the amended complaint must be dismissed.

### CONCLUSION

For the foregoing reasons, defendant Chrysler Credit Corporation's motion to dismiss is granted. Counts I, II and III of the amended complaint are dismissed in their entirety. The allegations regarding Joseph Villasenor's state law unreasonable termination charges in Count IV and the Highsmith's Illinois Consumer Fraud Act claims in Count V are also dismissed. The remaining portions of the amended complaint are the Highsmith's Count IV state law unreasonable termination charge claim and Villasenor's Count V state law unfair and deceptive business practices claim.

The Seventh Circuit has indicated a strong preference for the dismissal of pendent or ancillary claims whenever the district court disposes of the federal claims on which jurisdiction is based. *See Tomkins v. Village of Tinley Park,* 651 F.Supp. 50, 56 (N.D.Ill.1986), *aff'd* 840 F.2d 20 (7th Cir.1988), citing *United States v. Zima,* 766 F.2d 1153, 1158 (7th Cir.1985). We therefore dismiss the remaining portions of Counts IV and V, and plaintiffs may pursue these remaining claims in state court.