Steve A. EASTERWOOD, Plaintiff,

v.

GENERAL ELECTRIC CAPITAL AUTO LEASE, INC., and Troncalli Mitsubishi, Defendants.

No. 1:92–CV–271–CAM.

United States District Court,
N.D. Georgia,
Atlanta Division.

May 27, 1993.

Phillip Jamieson Walsh, Office of Phil Walsh, Atlanta, GA, for plaintiff.

Gary James Toman, Knox & Zacks; and R. Clay Porter, Frederick Drew Evans, III, Stephanie F. Goff and Linda Michel FitzGerald, Dennis Corry Porter & Gray, Atlanta, GA, for defendants.

## ORDER OF COURT

MOYE, Senior District Judge.

This matter comes before the Court on defendants' motion for summary judgment, (doc. 11), which plaintiff opposes. (Doc. 14). Defendants filed a reply in support of their motion, (doc. 17), and defendant General Electric Capital Auto Lease (GECAL) filed a supplemental brief. (Doc. 19). Finally, plaintiff filed a supplemental reply opposing summary judgment. (Doc. 21).

Plaintiff, Steve A. Easterwood, filed suit against defendants, GECAL and Troncalli Mitsubishi (Troncalli), alleging violations of the Consumer Leasing Act (CLA), 15 U.S.C.A. § 1640. Specifically, plaintiff alleges in count one of the complaint that the lease in issue does not comport with several requirements of the statute involving print size, disclosure provisions and unreasonable penalty or early termination provisions. Count two of the complaint alleges that these violations of the CLA result in the lease's being void and unenforceable under Georgia law. Plaintiff seeks $1,000, as well as costs and attorneys' fees, for each violation of the act. Plaintiff also seeks cancellation of the void lease, return of the payments made under the lease and prejudgment interest, under Georgia law. For the reasons which follow, the Court GRANTS defendants' motion for summary judgment as to count one of the complaint because the lease is not a

consumer lease subject to the Consumer Leasing Act. (Doc. 11).

### FACTS

The parties agree to the following facts: 1) plaintiff Steve Easterwood entered into a lease for a 1991 Mitsubishi 3000GT with Troncalli Mitsubishi on May 2, 1991; 2) as reflected in items 2.G and 2.H of the lease, the monthly lease payments totalled $20,-810.16; 3) form Al–620 6/89 (6002), the lease form itself was typeset by Mapes Printing, Inc., under the direction of Wayne Mapes; and 4) GECAL relied on the expertise of Mapes Printing, Inc., and Wayne Mapes to print the document as instructed. *See* defendants' statement of material facts, doc. 11 at 1–2; and plaintiff's response to movants' statement of facts, doc. 14 at 1–3.

### STANDARDS ON MOTION FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide that summary judgment "shall be rendered ... if ... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c) (West 1993). The party seeking summary judgment bears "the initial responsibility of informing the district court of the basis for its motion, identifying those portions of ... [the record] 'together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 159–60, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970). *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437–38 (11th Cir.1991). The movant's failure to meet this initial burden ends the inquiry and summary judgment should be denied. The non-moving party bears no burden at this juncture.

However, once the initial burden has been met the "burden shift[s] to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes sum-

mary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). At this point, "the non-moving party [must] go beyond the pleadings and by affidavits ... or by the 'depositions [,] answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Russ v. International Paper Co.,* 943 F.2d 589, 592 (5th Cir.1991) (quoting *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553), *cert. denied* —— U.S. ——, 112 S.Ct. 1675, 118 L.Ed.2d 393 (1992). *Accord Four Parcels of Real Property,* 941 F.2d at 1437–38.

In determining whether the moving party has met its burden, the Court views the evidence in the light most favorable to the party opposing the motion. *Adickes,* 398 U.S. at 158–59, 90 S.Ct. at 1608–09. Moreover, "[t]he evidence of the non-movant is to be believed ... and all justifiable inferences are to be drawn in his favor." *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987).

In order to survive a motion for summary judgment, the non-moving party need only present evidence "from which a jury might return a verdict in his favor." *Samples ex rel. Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988). However, denials or allegations by the non-moving party in the form of legal conclusions which are unsupported by any specific facts have no probative value, and, thus, are insufficient to create issues of material fact that would preclude summary judgment. *Broadway v. City of Montgomery,* 530 F.2d 657, 660 (5th Cir. 1976).[1] Finally, whether facts are material is determined by the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### LEGAL DISCUSSION

In their motion for summary judgment defendants seek: 1) dismissal of all claims against them because the lease is not a consumer lease subject to the Consumer Leasing Act because the total contractual obli-

---

1. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Court of Appeals for the Eleventh Circuit adopted as precedent all decisions of the former Fifth Circuit decided prior to October 1, 1981.

gation exceeds $25,000; 2) dismissal of all claims in count one relating to type size; and 3) dismissal of all claims asserted in count two because plaintiff seeks a remedy not available under applicable law. Initially, the Court must determine whether this lease is a consumer lease which comes within the scope of the CLA.

### Total Contractual Obligation

Defendants assert that the amount of plaintiff's minimum obligation under the lease is $27,210.16. Defendants derive this number by multiplying the monthly payment of $578.06 by the number of months of the lease, 36, totaling $20,810.16. Adding plaintiff's $6400 non-refundable down payment to $20,810.16 equals $27,210.16.

Plaintiff contends that his car lease involves a total contractual obligation not exceeding $25,000, and thus, the Consumer Leasing Act is applicable. Plaintiff argues that the $6400 he paid was identified in the lease as a "credit to initial value," not as a "non-refundable cash payment." Consequently, the $6400 cash payment should not be included as part of plaintiff's "total contractual obligation."

The gravamen of this initial dispute is: does the term "total contractual·obligation" include the $6400 cash payment made by plaintiff to Troncalli at the inception of the lease? If the $6400 payment is included, plaintiff's total contractual obligation exceeds $25,000 and thus, falls outside the scope of the CLA. If this payment is not included, plaintiff's total contractual obligation under the lease does not exceed $25,000 and thus, comes within the ambit of the CLA.

The parties have not offered, and the Court has not located, any authority interpreting the term "total contractual obligation" as used in the CLA. *See Rome v. C & S National Bank,* 1:91–CV–2772–HTW (N.D.Ga.1992) (recognizing term not defined and declining at that stage of proceedings to determine correct interpretation in light of factual dispute). Accordingly, the Court takes up this narrow issue of first impression.

Defendants argue that although the CLA provides no definition of the term "total contractual obligation," Regulation M of the CLA defines the analogous term "total lease obligation." Total lease obligation

> equals the total of (i) the scheduled periodic payments under the lease, (ii) any non-refundable cash payment required of the lessee or agreed upon by the lessor and lessee or any trade-in allowance made at consummation, and (iii) the estimated value of the leased property at the end of the lease term.

12 C.F.R. § 213.2(a)(17) (1992).

Defendants recognize that the term total lease obligation applies only to open-end or finance vehicle leases and that open-end leases differ from closed-end leases, like plaintiff's, in that·open-end leases require the payment of an additional sum of money at lease end. *See* doc. 11–3 at 5, brief in support of summary judgment. Thus, the third component, the estimated value of the leased property at the end of the lease "term," which is included in the definition of total lease obligation as to an open-end lease is not part of the obligation under a closed-end lease like plaintiff's. Defendants argue therefore by analogy that the total contractual obligation for a closed-end lease thus includes (i) the scheduled periodic payments under the lease and (ii) any nonrefundable cash payment required of the lessee or agreed upon by the lessor and lessee or any trade-in allowance made at consummation. *Id.*

Plaintiff argues that the term "total lease obligation" is applicable only to open-end leases and is not relevant to understanding the term "total contractual obligation." Alternatively, plaintiff argues that, even if the term total lease obligation were relevant, the commentary to the regulations makes clear that "[t]he total of scheduled periodic payments under the lease for purposes of calculating the total lease obligation does not include ... [a]ny amount not paid periodically." 12 C.F.R. § 213, Commentary, Supp. I at 331, 2(a)(17)3, periodic payments: inclusions and exclusions. By this argument plaintiff suggests that the $6400 credit to initial value which he paid was not a periodic

payment and thus cannot be included within the total lease obligation. However, the commentary addresses what is excluded in determining periodic payments as distinguished from what is excluded in determining initial payments, which is also addressed in the commentary. *See* 12 C.F.R. § 213, Commentary, Supp. I at 331, 2(a)(17)4, initial payments. Moreover, to the extent that the commentaries conflict with the regulations, the regulations prevail.

To begin, a consumer lease is

a contract in the form of a lease or bailment for the use of personal property by a natural person for a period of time exceeding four months, and for a *total contractual obligation* not exceeding $25,000 primarily for personal, family, or household purposes, whether or not the lessee has the option to purchase or otherwise become the owner of the property at the expiration of the lease, except that such term shall not include any credit sale....

15 U.S.C.A. § 1667(1) (emphasis added). *See also* 12 C.F.R. § 213.2(a)(6) (1992). Neither the CLA, nor the applicable regulations, 12 C.F.R. § 213 et seq. (1992), defines the term "total contractual obligation." However, the legislative history of the act reveals that "[t]he House bill definition of 'consumer lease' referred to those leases that are for a specified *rent* not exceeding $25,000, while the Senate amendment referred to those leases that are for a *total contractual obligation* not exceeding $25,000. The House receded to the Senate amendment." H.Conf.R. No. 94–872, 94th Cong., 2d Sess. 7 *reprinted in* 1976 U.S.C.C.A.N. 431, 443 (emphasis added).

The House considered and rejected the view that the obligation due under a consumer lease was akin to rent. Instead, the House accepted the Senate's requirement that a consumer lease not exceed the "total contractual obligation" of $25,000. The Senate's notion of total contractual obligation was to encompass something more than rent. The monthly "rental" payment for the use of a vehicle may be but a component of the total contractual obligation, also including, for example, a non-refundable cash payment.

For instance, rent, like that paid by apartment dwellers, typically may include only a monthly fee for the use of the premises for a specified period of time. By contrast, the consumer lease of a vehicle very often includes the payment of an additional, non-refundable, sum of money at the beginning or end of the lease, depending upon the type of lease.

In the case at bar, plaintiff entered into a new vehicle lease agreement, that is, a closed-end lease with a fixed price purchase option. *See* plaintiff's response to motion for summary judgment, doc. 14, affidavit of Marilyn Bright with duplicate carbon original lease contract attached. Plaintiff paid $6400 to Troncalli, noted on the lease as a "credit to initial value." Although plaintiff disputes that this payment was a non-refundable down payment, he concedes that the purpose in making the initial payment was to reduce the monthly payments. Deposition of Steve A. Easterwood (Easterwood dep.) at 19–20. Plaintiff also contends that the lease did not require that he pay $6400, rather, that this payment was discretionary. Easterwood dep. at 20–21. Nonetheless, plaintiff acknowledges that he made this payment in order to reduce his obligation under the lease. *Id.* at 21. Admittedly, had plaintiff chosen not to make this payment, whether characterized as a credit to initial value or as a down payment, his monthly payments would have been higher. *Id.* at 19, lines 4–23. Plaintiff, an accountant by training, knew that the value of the car about which he was negotiating approached $32,000. Easterwood dep. at 39–40. Robert W. Williams, defendant Troncalli's comptroller, testified that had plaintiff not made the $6400 down payment as part of his lease, plaintiff's monthly payments would have been $792.94 for 36 months. Doc. 18, affidavit of Robert W. Williams, at 2 ¶ 6. Thus, according to defendants, plaintiff's total contractual obligation would have been at least $28,545.84. Plaintiff does not dispute Mr. Williams's computation of what his monthly payment would have been had he not made the $6400 cash payment at the inception of the lease.

The Code of Federal Regulations includes a model closed-end or net vehicle lease disclosure form. The model lease includes a section entitled "[t]otal payment due at inception." 12 C.F.R. Pt. 213, Appendix C–2 at 320, item 3. Among the kind payments due at the inception of such a lease are: 1) capitalized cost reduction; 2) trade-in allowance; 3) advance monthly payment; 4) refundable security deposit; 5) delivery charges; or 6) registration fees. *Id.* Any other elements which are to be included in this item must be identified. *Id.* at 322, specific instructions item 3.

Review of plaintiff's lease reveals that there was no trade-in allowance credited to plaintiff; there was a $600 security deposit, although whether it was refundable is not stated (even if refundable, that would not reduce the total contractual obligation to $25,000); registration fees were included with license and title fees for a total of $103.

Plaintiff has not stated that he thought the $6400 payment would be returned to him, rather he has merely suggested that the lease form does not indicate whether this payment was or was not refundable. Nevertheless, plaintiff considered the $6400 payment as a down payment. Easterwood dep. at 18, line, 25; at 19, lines 7–9.

The purpose of the $6400 cash payment made by plaintiff was to compensate Troncalli for a portion of the total contractual obligation under the vehicle lease. The $6400 "credit to initial value" paid by plaintiff (or at least $5697) was, in point of fact, a nonrefundable cash payment.

■ The Consumer Leasing Act was intended to provide consumers with comprehensive information about the actual costs of leasing thus enabling them to compare alternatives. S.Rep. No. 94–590, 94th Cong., 2d Sess. 1–4 *reprinted in* 1976 U.S.C.C.A.N. 431, 431–34. This legislation was aimed especially at "the leasing of consumer durables—especially automobiles...." *Id.* at 432. The Court has little doubt that plaintiff's claims are the kind envisioned by Congress in enacting the CLA.

■ However, as to the instant case, the Court concludes that plaintiff's total contractual obligation includes both the monthly payments as well a non-refundable cash payment of at least $5697 made at the inception of the lease, a total of $26,507, thus exceeding the $25,000 jurisdictional ceiling imposed by the CLA. As such, the lease in issue does not come within the reach of the Consumer Leasing Act and, therefore, is not unlawful and void under federal law. Accordingly, the defendants are entitled to summary judgment as a matter of law as to count one of the complaint.

With respect to count two of the complaint, it appears that plaintiff is arguing that a violation of the CLA is not or should not be pre-emptive of additional remedies available under Georgia law. However, plaintiff has pointed to no reason why, independently under Georgia law and because contrary to the public policy of Georgia, the lease is void and unenforceable. *See Adams v. Trust Co. Bank,* 206 Ga.App. 554, 556, 426 S.E.2d 36 (1992); *cert. denied* (March 18, 1993) (holding that violations of Truth in Lending Act or Consumer Leasing Act give rise to remedies prescribed therein, and do not serve to invalidate contract or prevent lender or lessor from enforcing its rights under contract) (citations omitted). Since the Court has ruled that the CLA is inapplicable to this case because of the threshold monetary requirement, the Court is of the opinion that there is no preemption in this case. The question of whether there would be such preemption in this case were the Court to decide otherwise is, thus, moot.

The Court has not been made aware of any independent basis of jurisdiction in this case, such as diversity of citizenship. Should plaintiff believe, as his citation of *Adams v. D. & D. Leasing Co.,* 191 Ga.App. 121, 381 S.E.2d 94 (1989) suggests, that an independent cause of action exists, under Georgia law, without regard to the CLA, he should inform the Court within 10 days of the claimed basis for the Court's jurisdiction over such cause of action as well as a greater specification of the claimed cause of action. Failure to do so shall result in the prompt dismissal of this action thereafter.

Accordingly, the Court GRANTS defendants' motion for summary judgment with

respect to count one, doc. 11, and DEFERS ruling on defendants' motion for summary judgment on count two of the complaint pending response by plaintiff. The Clerk of Court is hereby DIRECTED to RESUBMIT this case after expiration of the time allowed for plaintiff to advise the Court as to any basis for the Court's jurisdiction apart from the CLA.

SO ORDERED.