**Stacy R. SANDERS, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**GOLD KEY LEASE, INC., Chrysler Credit Corp., Chrysler Financial Corp., and Corporate Does, Defendants.**

No. 94 Civ. 7632 (DAB).

United States District Court, S.D. New York.

Nov. 22, 1995.

Kaufman Malchman Kirby & Squire, L.L.P., New York City (Roger W. Kirby, Peter S. Linden, of Counsel), for Plaintiff.

Wilson, Elser, Moskowitz, Edelman & Dicker, White Plains, New York (David L. Tillem, of Counsel), for Defendants.

## MEMORANDUM & ORDER

BATTS, District Judge.

Plaintiff, Stacy Sanders, leased a Chrysler Jeep through Gold Key Lease, Inc. ("Gold Key"), a named Defendant.[1] As part of her leasing contract she paid a $475.00 refundable security deposit. Now, Plaintiff, on behalf of all those similarly situated,[2] claims that the Defendants were obligated to disclose, but failed to, in their lease agreements, that any interest earned on the refundable security deposit constituted a finance charge,

---

1. Defendants Chrylser Credit Corp., Chrysler Financial Corp. and Corporate Does are sued on the basis of respondeat superior, as co-conspirators, and aiders and abettors of Gold Key's alleged acts with regard to the security deposit. There is no allegation that Plaintiff had a contract or a lease obligation with any of the Defendants, other than Gold Key.

2. Plaintiff has not yet moved for class certification under Fed.R.Civ.P. 23.

in violation of 15 U.S.C. § 1601, *et seq.* and various state laws. Plaintiff also claims any profits generated from the refundable security deposit should be remitted to the Plaintiff and the class. Defendants now move to dismiss Plaintiff's claims under Fed.R.Civ.P. 12(b)(6) and 12(b)(1). In the middle of the briefing schedule of the instant motion, Plaintiff filed an Amended Complaint on January 27, 1995. Pursuant to this Court's Order in conference on February 24, 1995, the Court directed the Defendants' Reply Memoranda in Support of its Motion to Dismiss be responsive to the Amended Complaint. For the following reasons the Defendants' motion is granted.

## I. BACKGROUND

The Plaintiff is Stacy R. Sanders. On March 31, 1994, Plaintiff entered into a lease agreement with an automobile dealer known as Grand Prix Performance, Ltd. (Am.Compl. ¶ 21) for a 1994 Jeep Grand Cherokee Laredo (Defs.' Mem. Law at 4–5, Lease). Contemporaneously, the lease agreement was assigned to Gold Key. (Am.Compl. ¶ 21). The lease required the Plaintiff to pay the following costs in advance:

| | |
|---|---|
| a capitalized cost reduction downpayment: | $2,926.00 |
| refundable security deposit | 475.00 |
| first monthly payment | 460.45 |
| title, license and registration fees | 49.75 |
| taxes | 248.71 |

(Am.Compl. ¶ 23, Lease ¶ 1). These advance payments totalled $4,159.91. (Am.Compl. ¶ 23, Lease ¶ 1(h)). The Plaintiff was to pay 47 additional monthly payments of $460.45 each—consisting of $421.89 for the rental charge and $38.56 for taxes. (Am.Compl. ¶ 24, Lease ¶ 2). The Plaintiff was given the option of buying the jeep at the end of the lease term for a sum of $13,896.60, or in the alternative, to return the jeep to the dealer with a disposition fee of $275.00. (Am. Compl. ¶ 25, Lease ¶¶ 10–12). Thus, if Plain-

tiff opted not to purchase the Jeep her total payments under the Lease would be $25,-601.06; if she bought the Jeep the total payments would be $39,222.66. This type of lease is a closed-end lease.[3]

The lease did not disclose the use of the interest earned, if any, on the refundable security deposit. (Am.Compl. ¶¶ 33–35). The Plaintiff did not receive any interest earned, if any, on the security deposit in cash or as an amount deducted from her lease obligation. (Am.Compl. ¶ 32).

## II. DISCUSSION

"On a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (1995) (citations omitted). "The district court should grant such a motion only if, after viewing plaintiff's allegations in this favorable light, 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Walker v. City of New York,* 974 F.2d 293, 298 (2d Cir.1992) (quoting *Ricciuti v. New York City Transit Authority,* 941 F.2d 119 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957))), *cert. denied,* 507 U.S. 961, 113 S.Ct. 1387, 122 L.Ed.2d 762 (1993).

### A. Truth In Lending Act

Title I of the Consumer Credit Protection Act, as amended, 15 U.S.C. §§ 1601 *et seq.,* is commonly referred to as the Truth in Lending Act (TILA). *See* 12 C.F.R. § 213.1(a). The consumer leasing provisions of TILA, added in 1976 by the Consumer Leasing Act (CLA), are concentrated in Part E.[4] Regula-

---

**3.** Plaintiff acknowledges she has a closed-end lease (Pl.'s Mem. Law at 8; Defs.' Mem. Law at 4 n. 4). A closed-end lease gives the lessee the option to buy the vehicle at the end of the agreed upon lease term. An open-end lease arrangement, on the other hand, is one where, essentially, the lessee must buy the vehicle at the end of the agreed upon lease term. 12 C.F.R. pt. 213, Supp. I–CL–1, Comment to Reg. M § 213.2(a)(17) ("open-end leases in which the lessee's liability at the end of the lease term is

based on the difference between the estimated value of the leased property and its realized value").

**4.** The Defendants' Memoranda of Law addresses whether Plaintiff's claim is covered by Part B of TILA, as she alleged in her original Complaint. However, the Amended Complaint does not make mention of Part B nor does Plaintiff's Memorandum of Law. Furthermore, Defen-

tion M, issued by the Board of Governors of the Federal Reserve System implements the CLA. 12 C.F.R. § 213.1(a). The purpose of the CLA is to "assure that lessees of personal property are given meaningful disclosures of lease terms, to delimit the ultimate liability of lessees in leasing personal property and to require meaningful and accurate disclosures of lease terms in advertising." 12 C.F.R. § 213.1(b).

The Defendants move to dismiss the TILA claim on three separate grounds. First, that TILA's disclosure requirements do not apply to the Plaintiff because her total contractual obligation exceeds $25,000, and her lease, therefore, is not a "consumer" lease protected by TILA. Second, that the Defendants' lease complies with TILA's requirements for disclosure. Finally, because the Defendants complied with the Federal Reserve Board's regulations and model disclosure forms they have a good faith defense, as provided for in the Regulations.[5]

### 1. The Plaintiff's Total Contractual Obligation Exceeds $25,000

▮▮▮▮ First, the Defendants move to dismiss under 15 U.S.C. § 1667(1).[6] Section 1667 applies only to consumer leases and states "the term 'consumer lease' means a contract in the form of a lease ... for a

period of time exceeding four months, and for a total contractual obligation not exceeding $25,000...." 15 U.S.C. § 1667(1). The Defendants argue that the Plaintiff cannot maintain her action because her lease exceeds a "total contractual obligation" of $25,000. There is no dispute that the Plaintiff's lease term exceeded four months,[7] nor that the Plaintiff's lease is covered by Part E of TILA. (Pl.'s Mem. Law at 7–23, Defs.' Mem. Law at 10–14).[8] What is in dispute is the definition of "total contractual obligation."

The statute does not define the term "total contractual obligation." Regulation M does not define the term nor does the commentary thereto. The legislative history of the act states, "[t]he House bill definition of 'consumer lease' referred to those leases that are for a specified *rent* not exceeding $25,000, while the Senate amendment referred to those leases that are for a *total contractual obligation* not exceeding $25,000. The House receded to the Senate amendment." H.Conf.R. No. 94–872, 94th Cong., 2d Sess. 7, *reprinted in* 1976 U.S.C.C.A.N. 431, 443 (emphasis added); *Easterwood v. General Elec. Capital Auto Lease, Inc.*, 825 F.Supp. 306 (N.D.Ga.1993). Due to the fact that the House accepted the phrase "total contractual obligation" in lieu of "rent" it follows that

---

dants' Reply Memorandum of Law only addresses Part E of TILA. Hence, the Court will limit its inquiry to Part E.

**5.** 12 C.F.R. pt. 213, Supp. I–CL–1, App. C— Model Forms (1) ("lessors using [the forms] properly will be deemed to be in compliance with the regulation").

**6.** The action is brought pursuant to 15 U.S.C. § 1640 which provides for civil suits for violation of TILA including section 1667.

**7.** Plaintiff concedes her lease was for a term exceeding four months (Compl. ¶ 22), however, she argues that she could end her lease at anytime, and therefore concludes her total contractual obligation may not necessarily exceed $25,000. Pl.'s Mem. Law at 14–16. The Plaintiff suggests a standard whereby any lease with a provision allowing the lease to be terminated before completion, resulting in the absolute total obligation falling under $25,000, should be covered by the CLA. Therefore, even though a lease is for a $125,000 Lamborghini, if there were a provision in the lease allowing the lessee to terminate the lease early and the amount owing was

under $25,000, then the lease would be covered by the CLA. The Defendant disagrees with this interpretation and the Court is inclined to agree. The test is not whether there is an early termination clause, leaving the definition of "total contractual obligation" dependant on whether the lessee fulfills the lease or terminates it. The test is the amount of the "total contractual obligation," *and the lessee's obligation is to fulfill the* terms of the lease, which assumes completion. See 12 C.F.R. pt. 213, Supp. I–CL–1, § 213.4, ¶ 4(a)(1), which states, "[t]he regulation assumes that the parties will perform fully according to the lease terms. For example: In a 3–year lease with a 1–year minimum term after which there is no penalty for termination, disclosures should be based on the full 3–year term of the lease. The 1–year minimum term is only relevant to the early termination provisions of § 213.4(g)(12), (13) and (14)." Although, Plaintiff's point is well-taken, that this comment only applies to disclosure provisions, the statement clearly includes the phrase "the *parties* will perform fully," leading the Court to conclude that the regulations assume completion of the lease.

**8.** *See supra* note 4.

"total contractual obligation" includes fees more than the periodic lease payments. The parties, however, disagree as to what additional fees are included in the definition. The Court now turns its attention to determining what additional fees are included in the definition.

■ The parties refer the Court to the definition of "total lease obligation" for guidance in calculating "total contractual obligation." (Pl.'s Mem. Law at 8–13, Defs.' Mem. Law at 8). Unfortunately, this term applies only to open-end leases. 12 C.F.R. pt. 213, Supp. I–CL–1, Official Staff Commentary to Reg. M § 213.2(a)(17)(1) (the "total lease obligation" "is relevant only to so-called open-end leases"). The lease here is a closed-end lease. Therefore, the definition is not helpful in determining the definition of "total contractual obligation."[9]

■ Instead the Court will consider each payment individually. First, there is no dispute that the 48 payments of $460.45,[10] totalling $22,101.60, are part of the "total contractual obligation."[11] Second, it is clear that the "Capitalized Cost Reduction" payment of $2,926.00 (Lease, ¶ 1(a)) is included in the total obligation.[12] As a downpayment, it decreases the monthly lease payments the Plaintiff is obligated to pay. In other words,

if the downpayment was not made the Plaintiff's monthly payments would be more than $460.45; hence, downpayments are, as monthly payments are, included in the "total contractual obligation." See Easterwood, 825 F.Supp. at 310 (the issue there was whether a $6400 downpayment was included in "total contractual obligation." The Court concluded that downpayments were included.). Third, the Plaintiff was obligated to either buy the Jeep at the end of the lease term or if she chose not to then she had to pay a disposition fee of $275.00. Adding the lesser amount, $275.00, the total is $25,302.60. Therefore, because the lease exceeds a "total contractual obligation" of $25,000 it is not covered by Part E of TILA.

Consequently, it is unnecessary to address the defendants' further grounds for arguing that TILA does not apply to the action here. Defendants' Motion to Dismiss the TILA claims is granted.

### B. State Law Claims

■ For the reasons set out above all Plaintiff's federal claims have been dismissed. Hence, the Court must determine whether it is appropriate to retain the remaining state law claims under supplemental

9. Plaintiff's painstaking discussion (see Pl.'s Mem. Law at 12) regarding the Model Form C–1 is therefore irrelevant because the C–1 Form applies to open-end leases not closed-end leases. 12 C.F.R. pt. 213, Supp. I–CL–1, App. C—Model Forms.

10. The issue has been raised by the parties as to whether the taxes on the periodic payments are to be included. Model Form C–1, which applies to open-end leases, (therefore using the term "total lease obligation") includes the sales taxes in the calculation of "total lease obligation." 12 C.F.R. pt. 213, Supp. I–CL–1, App. C–1, Specific Instruction, Item 4 ("The terms in 4(a) [, referring to the Model Form section addressing periodic payments,] are those portions of each payment which are included in the computation of the 'Total Lease Obligation.' This term includes sales/use taxes paid on the periodic (monthly) payment."). It follows that if the taxes are included in the more restrictive definition of "total lease obligation" they would also be included in "total contractual obligation." Furthermore, the words "total" and "obligation" mean all the fees the lessee would be obligated to pay, and the lessee is obligated under the contract to pay the

taxes. Finally, Plaintiff calculates "total contractual obligation," herself, using the sum $460.45, but only uses forty-seven monthly payments, therefore falling under the $25,000 cap. Pl.'s Mem. Law at 11.

11. The Plaintiff argues that she had to pay only 47 payments because the first payment was due on April 1, and she did not pay that payment. Pl.'s Mem. Law at 11. However, the lease specifically calls for 48 payments and the Plaintiff's argument that a payment was due on April 1, is without merit or substance. The lease specifically states that the first payment is due in advance and the "remaining 47 Monthly Payments of $460.45 each [are due] on the 30 [sic] day of each month, beginning with the month of April, 1994." (Lease, ¶ 5).

12. Plaintiff's argument that this amount may contain charges, such as delivery charges, is without merit. The Plaintiff asserts in her Amended Complaint that she paid $2926.00 as a downpayment. Am. Compl. ¶ 23. There is no mention in the Amended Complaint nor in the lease that this amount contained anything other than a downpayment.

jurisdiction. Section 1367(a) states in pertinent part,

> the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

Section 1367(c) provides, however, four exceptions to the rule. A district court may decline to exercise jurisdiction if

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

 The decision to dismiss state law claims is left to the sound discretion of the district judge. *Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir.1994). Furthermore, when claims are dismissed before trial the balance of factors will tilt towards declining to exercise jurisdiction. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) ("If the federal claims are dismissed before trial ... the state claims should be dismissed as well"); *Travelers Ins. Co. v. Keeling,* 996 F.2d 1485, 1490 (2d Cir.1993); *Litwin v. American Express Co.,* 838 F.Supp. 855, 857 (S.D.N.Y.1993). Because all the federal claims have been dismissed at a preliminary

stage, no reason remains to exercise supplemental jurisdiction over the state law claims.[13] Hence, they are hereby dismissed.

**C. Request to Replead**

Plaintiff's attaches to its papers a request to replead, under Fed.R.Civ.P. 15(a). The Plaintiff has already amended her Complaint twice; her request is denied.

### III. CONCLUSION

Defendants' Motion to Dismiss is granted and Plaintiff's case is hereby dismissed without prejudice.

SO ORDERED.

---

**13.** Diversity jurisdiction also would not apply here. Although there appears to be complete diversity between the parties, the amount in controversy, interest on $475.00, does not exceed the jurisdictional requirement of $50,000.