George K. PRICE, Harry L. Schuman and Sharon Rosen, Plaintiffs–Appellants–Cross–Appellees,

v.

FCC NATIONAL BANK, Defendant–Appellee–Cross–Appellant.

Nos. 92–3106, 92–3261.

United States Court of Appeals, Seventh Circuit.

Argued April 6, 1993.*

Reargued June 2, 1993.

Decided Aug. 18, 1993.

---

* This case was originally argued before a panel consisting of Circuit Judges Cummings, Cudahy and Posner. Following oral argument on April 6, 1993, Circuit Judges Cummings and Posner recused themselves and the case was reassigned to the present panel.

Arthur T. Susman (argued), Susman, Saunders & Buehler, Aaron S. Wolff, Chicago, IL, for plaintiffs-appellants in No. 92–3106.

Arthur T. Susman (argued), Terry Rose Saunders, Terrence Buehler, Susman, Saunders & Buehler, Chicago, IL, for plaintiffs-appellees in No. 92–3261.

Lynn A. Goldstein (argued), John C. Simons, First Nat. Bank of Chicago, Chicago, IL, for defendant-appellant.

Before CUDAHY, RIPPLE and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

FCC National Bank (FCC) offers Visa and MasterCard bank credit cards under the name "First Card." The privileges and obligations of holding a First Card, which the plaintiffs here all have, are set forth in the cardholder agreement (the agreement). Before April 1991, the agreement provided that all cardholders had 25 days after the receipt of a billing statement to pay any outstanding balance without incurring a finance charge. This so-called "grace period" was fully disclosed on the plaintiffs' billing statements. The agreement was amended on April 1, 1991, to provide that a finance charge would accrue unless payment was made on or before the "payment due date" printed on the billing statement. Thus, after the April 1991 amendment, the grace period was the time between the billing date and the "payment due date."

After April 1, the plaintiffs' billing statements reflected a grace period of 20 days instead of the 25 days formerly disclosed. The plaintiffs called FCC's customer service department to find out why their grace period had been shortened. They maintain that FCC's customer service operators told them that an actual 25–day grace period still applied but that the 20–day period was indicated on the bill in order to encourage early payment. FCC does not deny any of this. At oral argument, counsel explained that extensive experience had led FCC to the conclusion that customers who once paid their bills before incurring a finance charge were inclined to continue doing so month after month. But because procrastination is ingrained in the human condition, some of these customers would nevertheless wait until the twenty-third or twenty-fourth day of the 25–day grace period to mail their checks. If, as was often the case, the checks arrived at FCC after the grace period, FCC assessed a finance charge, as it was entitled to do pursuant to the agreement. This assessment greatly irritated these "prompt-paying" customers, since they had intended all along to pay within the grace period. To help alleviate this problem, FCC, after properly amending the agreement, began showing a 20–day grace period on the billing statements of those customers who routinely pay without incurring a finance charge, while retaining an actual grace period of 25–days. FCC reasoned that even if the customers paid at the end of the 20–day grace period shown on the billing statement their checks would still arrive before the expiration of the 25–day grace period.

The plaintiffs contend, in count I of their complaint, that FCC's practices, which admittedly tend to encourage payment a day or so earlier than is actually required to avoid the imposition of finance charges, are contrary to the Consumer Credit Protection Act, 15 U.S.C. §§ 1601–1693r, commonly referred to as the Truth in Lending Act. The plaintiffs also allege that the practice violates various provisions of Illinois law. Finally, the plaintiffs request certification of a class, with themselves as class representatives, consisting of all holders of First Cards to whom FCC had, on their billing statements,

represented a 20–day grace period. The district court dismissed count I pursuant to FCC's motion to dismiss for failure to state a claim upon which relief could be granted. In the absence of a viable claim under federal law, the district court dismissed plaintiffs' state-law claims for want of jurisdiction. In a separate opinion, the district court certified the requested class pursuant to Fed.R.Civ.P. 23(b)(3) but not, as the plaintiffs had also requested, pursuant to Rule 23(b)(2). Both parties appeal. We affirm the dismissal of all counts of the plaintiffs' complaint and dismiss as moot the appeals pertaining to class certification.

■ Section 127(b)(9) of the Truth in Lending Act provides, in pertinent part, that issuers of credit cards, such as FCC, disclose in each periodic billing statement to its customers

[t]he date by which or the period (if any) within which, payment must be made to avoid additional finance charges, except that the creditor may, at his election and without disclosure, impose no such additional finance charge if payment is received after such date or the expiration of such period.

15 U.S.C. § 1637(b)(9). FCC's practice clearly complies with this provision. FCC extends a 20–day grace period to customers, such as the plaintiffs, who routinely pay their bills without incurring a finance charge. There is no dispute that the existence and duration of this grace period is fully disclosed on the billing statements of the affected customers. Thus, FCC has satisfied its obligation to disclose "the period ... within which[ ] payment must be received to avoid additional finance charges."

FCC also has elected not to impose a finance charge on these customers' accounts unless payment is received more than 25 days past the billing date, although presumably it could, consistent with the agreement, assess such a charge as early as the twenty-first day after the billing date. The "except" clause in § 1637(b)(9) expressly permits such a policy of forbearance. Moreover, the statute permits FCC to maintain such a policy without disclosure. FCC's practice, therefore, cannot be said to run afoul of the Truth in Lending Act.

The plaintiffs contend that the except clause permits "*waiver* of finance charges on payments received after the end of [the] grace period." Appellant's Br. at 20 (emphasis supplied). From this assumption, they are able to argue that the first clause of § 1637(b)(9) requires a creditor such as FCC to disclose when it *actually* imposes a finance charge on its customers' unpaid balances because only finance charges that have in fact been imposed can be waived. Under this interpretation, creditors would have to assess a finance charge once the grace period disclosed on the billing statement has expired, although they could later waive it. But, as the district court observed, this view directly contradicts the language of § 1637(b)(9)'s except clause that permits a creditor to *elect not to impose* a finance charge even though payment is received after the "payment due date" has passed. *Price v. FCC Nat'l Bank*, 1992 WL 209508, at *1–2 (Aug. 18, 1992 N.D.Ill.). FCC could impose a finance charge on the plaintiffs' unpaid balances 21 days after the billing date that appears on their monthly statements. FCC routinely, indeed, as a matter of policy, chooses not to do so. The clear and unambiguous language authorizes precisely this sort of practice.

The plaintiffs also contend that the except clause should be read restrictively to permit FCC to elect not to impose finance charges only on a case-by-case basis. Accordingly, the plaintiffs maintain, FCC may use the except clause only to avoid assessing finance charges that are the result of (1) its own mishandling of timely payments, (2) unexpected late mail delivery or (3) some (unspecified) "fault of the cardholder." Appellant's Br. at 25. We reject these contentions. First, 15 U.S.C. § 1666c *forbids* a creditor from imposing a finance charge if payment was properly and timely made but not credited to the cardholders account. Accordingly, since finance charges may never accrue as the result of a creditor's mishandling of timely payments, a creditor will never have the opportunity to *elect* not to impose a finance charge under such circumstances. Second, none of the language in § 1637(b)(9)'s except

clause indicates that the decision not to impose a finance charge must be made on an ad hoc basis. The plaintiffs' proposed construction, which permits only an ad hoc application of the except clause, creates the possibility that similarly situated cardholders will be treated differently, i.e., one will be assessed a finance charge and one will not. Such dissimilar treatment may be the sort of "unfair credit billing ... practice[ ]" that the Truth in Lending Act sought to eliminate. 15 U.S.C. § 1601(a).

We conclude that FCC may maintain, consistent with the Truth in Lending Act, a generally applicable, undisclosed policy of not imposing finance charges on customers' unpaid balances for a fixed period of time beyond a properly disclosed grace period. Accordingly, the district court did not err in dismissing count I of the plaintiffs' complaint. Nor did the district court err in dismissing the plaintiffs' state-law claims, since the only federal claim over which it had jurisdiction was properly dismissed. 28 U.S.C. § 1367(c)(1). Finally, because we hold that the district court properly dismissed the plaintiffs' entire complaint, the appeals pertaining to class certification are moot and are thus dismissed for want of jurisdiction.

AFFIRMED IN PART AND DISMISSED IN PART.