Lawrence B. LITWIN, Plaintiff,

v.

AMERICAN EXPRESS COMPANY and American Express Travel Related Services Company, Inc., Defendants.

No. 92 Civ. 3660 (MBM).

United States District Court, S.D. New York.

Dec. 9, 1993.

---

Bruce S. Coleman, Mark S. Pomerantz, Coleman & Rhine, New York City (Dwight Golann, Boston, MA, of counsel), for plaintiff.

Robert S. Appel, Wayne C. Matus, Maria T. Galeno, William C. McCartney, Christy & Viener, New York City, for defendants.

**OPINION AND ORDER**

MUKASEY, District Judge.

Plaintiff, according to the complaint, is the holder of a charge card issued by defendant American Express Travel Related Services Company, Inc., one of the subsidiaries of defendant American Express Company, a holding company. (collectively, "American Express") He sues as the representative of all holders of the eponymous and nearly ubiquitous [1] cards. The factual predicate for plaintiff's various claims is that American Express charges its card-holders (whom American Express calls Cardmembers) an annual fee, but follows a secret marketing strategy of waiving such fees in whole or in part when Cardmembers complain about the fee and/or threaten to cancel their cards, and has compounded that evil by falsely denying to the Wall Street Journal, among others, that such a strategy exists.

According to plaintiff, this course of conduct violates 15 U.S.C. § 1637(c) and (d) under the Truth In Lending Act ("TILA") and accompanying regulations, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, common-law principles barring fraud, and Section 349 of New York's General Business Law, which grants a right of action to any consumer injured by deceptive business practices, and constitutes a breach of contract. He bases federal jurisdiction on the TILA and RICO claims, and relies on principles of pendent jurisdiction to sweep in the state law claims.

Defendants dispute plaintiff's factual predicate, but argue that even if it is accepted as true, as it must be on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the complaint fails to state a claim upon which relief can be granted. For the reasons set forth below, defendants are correct and the complaint is dismissed.

1. The author of this opinion as well as his wife and two children hold American Express Cards. The docket in this case reflects that all have signed and filed a statement opting out of the class and waiving any possible recovery. Also docketed, for those curious to examine it, is correspondence among the author, the Committee on Codes of Conduct of the Judicial Conference of the United States, and the Chief Judge of

**I.**

The portions of TILA upon which plaintiff relies mandate truthful disclosure by credit issuers in direct mail applications and solicitations, of "[a]ny annual fee, other periodic fee, or membership fee imposed for the issuance or availability of a credit card, including any account maintenance fee or other charge imposed based on activity or inactivity for the account during the billing cycle," 15 U.S.C. § 1637(c), and disclosure of the same data in connection with renewals. 15 U.S.C. § 1637(d). The corresponding regulations requiring those disclosures appear at 12 C.F.R. §§ 226.5a(b)(2) and 226.9(e). Specific items to be disclosed are listed at 12 C.F.R. § 226.6, and include:

> (b) *Other charges.* The amount of any charge other than a finance charge that may be imposed as part of the plan, or an explanation of how the charge will be determined.

The regulation appearing at 12 C.F.R. § 226.9(c)(1) requires written notice to the consumer "[w]henever any term required to be disclosed under § 226.6 is changed[.]"

Plaintiff's position, shorn of rhetoric and conformed to the applicable regulations, appears to be that the secret strategy pursued by American Express is a change in a "charge other than a finance charge" that not only has not been disclosed, but has been denied. Here, plaintiff appears to have overlooked an important canon of statutory and regulatory construction: read on. The next paragraph of the last-quoted regulation reads as follows:

> *Notice not required.* No notice under this section is required when the change involves ... a reduction of any component of a finance or other charge....

12 C.F.R. § 226.9(c)(2). Which is to say, to the extent the regulations bear on this case,

this Court, discussing and debating the extent and effect of the potential conflicts of interest that may (or may not) be encountered when a judge and members of his family have even a slight financial interest in a case. This correspondence illustrates nothing so starkly as how difficult judges can make their own lives when they set their minds to it.

they appear specifically to permit the conduct plaintiff claims violates the law: reduction of charges without notice.

The case law plaintiff relies on bears no relationship to this case. Thus, plaintiff points to a bankruptcy court case, *In re Cox,* 114 B.R. 165 (C.D.Ill.1990), which held that an undisclosed reduction in the cost of credit could violate TILA. That case, however, was decided under a section of the statute and a regulation not applicable here, 15 U.S.C. § 1606(c) and 12 C.F.R. § 226.22(a)(2), which bars any deviation greater than ⅛ of a percentage point between the disclosed and the actual annual percentage rate of credit. *See also Shroder v. Suburban Coastal Corp.,* 729 F.2d 1371 (11th Cir.1984) (same). That regulation does not deal with annual fees.

Plaintiff cites *Jenkins v. Landmark Mtge. Corp.,* 696 F.Supp. 1089 (W.D.Va.1989) to advance the claim that defendants have violated TILA's mandate that all disclosures be made "clearly and conspicuously." 15 U.S.C. § 1635(a). That mandate, however, relates to matters such as clarity of text and type size, and the case deals with a consumer's right to rescind absent strict compliance.

Plaintiff brandishes as well dictum in a Seventh Circuit decision relating to a credit card issuer's undisclosed policy of not imposing finance charges on unpaid balances even beyond a properly disclosed grace period. The plaintiff in that case, *Price v. FCC Nat'l Bank,* 4 F.3d 472 (7th Cir.1993), argued that the only kind of undisclosed reduction of a finance charge permissible under the regulation last quoted above is a reduction effected on an *ad hoc* case-by-case basis. The Court rejected that argument and responded to it in part as follows:

> The plaintiffs' proposed construction ... creates the possibility that similarly situated cardholders will be treated differently, i.e., one will be assessed a finance charge and one will not. Such dissimilar treatment may be the sort of 'unfair credit billing ... practice[ ]' that the Truth in Lending Act sought to eliminate. 15 U.S.C. § 1601(a).

4 F.3d at 475. Plaintiff argues that this quoted dictum means that dissimilar treatment of Cardmembers with respect to their membership fees violates TILA. That argument lacks force because the dictum itself lacks force. First, it is highly equivocal; "may be the sort of 'unfair credit billing ... practice'" is not the sort of statement on which one can hang an entire case, as plaintiff would. This is not the kind of considered dictum meant to provide guidance to other courts in deciding other cases. *See United States v. Oshatz,* 912 F.2d 534, 540 (2d Cir. 1990) (distinguishing between considered dictum and other statements not strictly necessary to the holding), *cert. denied,* —— U.S. ——, 111 S.Ct. 1695, 114 L.Ed.2d 89 (1991). Second, the Court quotes merely the section containing the statute's statement of purpose. There is more to the statute than its statement of purpose, which may inform interpretation of substantive provisions but cannot substitute for them. Put another way, the statute does not purport to make unlawful every practice relating to credit cards that anyone might describe as "unfair," but only those covered in the substantive sections. Third, and more particularly, to the extent the quoted statement relates to "unfair *credit* billing" practices (emphasis added), which are the main focus of the statute, it does not relate to the membership fee in this case, which has nothing to do with the terms of credit. Finally, if the quoted dictum really was meant to suggest that unequal treatment in connection with membership fees is barred by the statute, it is authority not binding on me and I respectfully decline to follow it because there is no substantive provision of the statute or regulations embodying that view.

For the above reasons, plaintiff's TILA claim finds no support in the statute or in the regulations and must be dismissed.

## II.

Plaintiff's RICO claim is no more substantial than his TILA claim.

The way plaintiff would construct a RICO claim from these facts, as gleaned from the allegations in the complaint, is as follows: The company charges an annual membership fee to its Cardmembers. It sends bills, including bills for that fee, through the mail.

If customers in good standing complain about the annual fee, and/or threaten to cancel their cards unless the fee is waived, the company will waive the annual fee, and has authorized its sales agents who deal with the public on the telephone and by correspondence to waive such fees. The company, however, does not tell the public that those who so complain may have their fees waived, and indeed has denied that it has such a policy, such denials having been transmitted *inter alia* by interstate wire. The failure to disclose this policy in communications with Cardmembers is a material omission, and the denial that the policy exists is a material false statement. Collection of membership fees through the use of such material omissions and false statements constitutes a scheme or artifice to defraud. The mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, forbid the use of the mails and interstate wires in aid of a scheme or artifice to defraud. The violation of those statutes is included among the acts constituting racketeering activity. 18 U.S.C. § 1961(1). Defendants are an enterprise within the meaning of the statute. 18 U.S.C. § 1961(4). Two or more such acts within ten years, committed by a person while conducting the affairs of an enterprise, with the threat that such acts may be ongoing, constitutes a pattern of racketeering activity in violation of the statute. 18 U.S.C. §§ 1961, 1962(c). It follows that American Express conducts its business through a pattern of racketeering activity in violation of the statute. Q.E.D.

Defendants have attacked that chain of logic at a variety of points. For example, they have argued that they cannot simultaneously be the enterprise and the person conducting the enterprise in violation of the statute, *Cullen v. Margiotta,* 811 F.2d 698, 729 (2d Cir.), *cert. denied sub nom., Nassau County Republican Committee v. Cullen,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987), that no particular predicate acts of mail or wire fraud have been pleaded, and that plaintiff has not properly pleaded a RICO pattern.

However, the most basic defect in plaintiff's pleading, and one that cannot be cured by repleading, is that what plaintiff relies on to establish a RICO claim is violation of the mail and wire fraud statutes, but the course of conduct plaintiff describes in his complaint is not a fraud. Although the mail and wire fraud statutes are to be read expansively to cover more than is embraced by the elements of common law fraud, *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.,* 904 F.2d 786, 791 (1st Cir.), *cert. denied,* 498 U.S. 992, 111 S.Ct. 536, 112 L.Ed.2d 546 (1990), an unlawful scheme to defraud must include at a minimum the potential for actual harm or injury. *United States v. Wallach,* 935 F.2d 445, 461 (2d Cir.1991). There is no such potential or actuality here. Consumers are told that if they want defendants' service, they must pay a fee. If they pay that fee, they get the service. That they might get the service also without paying the fee, or by paying a lesser fee, does not mean that they have suffered cognizable damage. If it did, the resulting rule of law would bring the marketplace to a virtual standstill. Merchants who advertised a price and then lowered it in response to consumer haggling ("I can get it cheaper elsewhere," or even "Can you do any better?"), including automobile dealers and electronics merchants, would be guilty of fraud. When a litigant would give a statute a meaning that yields absurd results, that is a fair indication that the statute doesn't mean what that litigant has suggested. *See Green v. Bock Laundry Mach. Co.,* 490 U.S. 504, 509–11, 109 S.Ct. 1981, 1984–85, 104 L.Ed.2d 557 (1989). The mail and wire fraud statutes were not meant to protect consumers against the irritation of learning that others have gotten a better deal.

Nor is defendants' allegedly false denial of a fee waiver policy itself actionable. Plaintiff has not alleged, nor is it possible to envision, reasonable reliance on such a statement. The scenario plaintiff would have to prove in order to recover for this denial would depict a consumer considering a toll-free telephone call[2] to challenge the mem-

---

2. I take judicial notice of the fact that each American Express Card is imprinted with a toll-free number on the back for inquiries and com-

ments. Fed.R.Evid. 201; *cf. Pincus and Assocs. v. Oppenheimer & Co.,* 936 F.2d 759, 762 (2d Cir.1991) (permitting consideration of a publicly

bership fee, who is then deterred to his financial detriment from making that call by defendants' denial. Whether the mail and wire fraud statutes were enacted to protect only persons of ordinary prudence and comprehension, *United States v. Baren*, 305 F.2d 527, 533 (2d Cir.1962), or even the most gullible, *United States v. Brien*, 617 F.2d 299, 311 (1st Cir.), *cert. denied*, 446 U.S. 919, 100 S.Ct. 1854, 64 L.Ed.2d 273 (1980), meekness that is of another world should not be the governing standard.

\*　　\*　　\*　　\*　　\*　　\*

For the above reasons, plaintiff's federal claims must be dismissed. Leave to replead would be futile and is denied. Because the federal claims have been dismissed at a preliminary stage, there is no reason to exercise pendent jurisdiction over the state law claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Plaintiff's complaint is dismissed.

SO ORDERED.

filed prospectus in connection with a motion to dismiss).