Kelvin HIGHSMITH, Marcita Highsmith, and Joseph Villasenor, Plaintiffs–Appellants,

v.

CHRYSLER CREDIT CORPORATION, Defendant–Appellee.

No. 93–1402.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 27, 1993.

Decided March 8, 1994.

Francine Schwartz, Michael B. Hyman, Much, Shelist, Freed, Denenberg & Ament, Robert J. Adams, Daniel A. Edelman (argued), Cathleen M. Combs, Tara G. Redmond, J. Eric Vander Arend, Edelman & Combs, Chicago, IL, for plaintiffs-appellants.

Dawn L. Haghighi, Hinshaw & Culbertson, Chicago, IL, Daniel F. Gosch, Detroit, MI, Robert E. Kinchen, Dickinson, Wright, Moon, Van Dusen & Freeman, James C. Schroeder, Lynne M. Raimondo (argued), Victoria R. Collado, Mayer, Brown & Platt, Chicago, IL, for defendant-appellee.

Before WOOD, Jr., CUDAHY, and EASTERBROOK, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The plaintiffs in this case entered into consumer automobile leases with the defendant, Chrysler Credit Corporation ("Chrysler"). The leases specified that in the event of default or early termination the lessees would be liable for early termination charges calculated in accordance with the provisions in the leases. The plaintiffs filed suit against Chrysler alleging that the early termination charges were unenforceable under the federal Consumer Leasing Act, various state statutes, and state common law. They also claimed that the leases violated the disclosure requirements of the Consumer Leasing Act. The district court dismissed the claims and this appeal followed.

## I.

This case involves two leases with nearly identical provisions. Kelvin and Marcita Highsmith are the lessees under the first lease and Joseph Villasenor is the lessee under the second. The factual background and current status of the two leases are rather different and merit separate discussion.

The Highsmiths entered into a four-year lease for a Plymouth Sundance on March 10, 1987. The lease contained a provision setting forth charges for early termination or default. Eighteen months later, on September 21, 1988, the Highsmiths filed a Chapter 13 bankruptcy petition naming Chrysler as a creditor. The bankruptcy court entered an agreed order rejecting the 1987 lease. It also modified the automatic stay so that Chrysler could repossess the car. On April 25, 1989, after selling the car, Chrysler determined that because the Highsmiths had terminated the lease early, they were liable for an additional $5,400 under the early termination or default provisions of the lease. Chrysler filed a proof of claim in the bankruptcy court for this amount. Shortly thereafter, however, the bankruptcy court dismissed the Highsmiths' petition for material default under 11 U.S.C. § 1307(c)(6) (1988).

Chrysler then filed a suit in state court to recover the $5,400 deficiency. After learning that the Highsmiths had refiled their Chapter 13 petition, Chrysler dismissed its state court action in order to comply with the automatic stay of 11 U.S.C. § 362 (1988). Chrysler never filed a proof of claim in this new bankruptcy proceeding. Rather, the Highsmiths themselves filed a claim on behalf of Chrysler, objected to that claim, then filed an adversary proceeding claiming that the Chrysler lease violated both federal and state law. The bankruptcy court determined this to be a noncore proceeding and the case then moved to the district court. Ultimately the Highsmiths filed an amended complaint adding Joseph Villasenor as a plaintiff.

Mr. Villasenor entered into a four-year lease with Chrysler on December 17, 1990 which required him to make 48 monthly payments of roughly $360. The other terms of the lease are nearly identical to the Highsmith lease. Villasenor has not yet terminated his lease, nor has he alleged that he wishes to terminate his lease. In the amended complaint he is seeking a declaration of the consequences of early termination.

Under the amended complaint the Highsmiths allege the following: 1) the lease violates provisions of the federal Consumer Leasing Act (which incorporates portions of the Truth in Leasing Act) (Counts I, II, & III); 2) the early termination provisions of the lease are unenforceable penalties under Illinois common law (Count IV); and 3) the lease violates the Illinois Consumer Fraud Act and its Michigan counterpart (Count V). Upon motion by Chrysler, the district court dismissed Counts I, II, III, and V because the Highsmiths were time-barred. Having dismissed all federal claims, the court used its discretion to dismiss the remaining state law claim (Count IV) without prejudice. The Highsmiths challenge only the dismissal of their claim under the Illinois Consumer Fraud Act (Count V).

Mr. Villasenor makes the following similar allegations: 1) the early termination provision in his lease violates the Consumer Leasing Act under 15 U.S.C. § 1667b(b) (1988) (Count I); 2) the lease violates the disclosure requirements of the Consumer Leasing Act under 15 U.S.C. § 1667a (1988) (Count II); 3) the early termination provision is an unenforceable penalty under Illinois law (Count IV); and 4) the lease violates the Illinois Consumer Fraud Act and its Michigan counterpart (Count V). Chrysler moved to dismiss these counts as well. The court held that Villasenor lacked standing to raise Counts I and IV, and dismissed them accordingly. Next it held that Villasenor had failed to state a claim for disclosure violations under the Consumer Leasing Act (Count II) and dismissed that claim pursuant to Fed. R.Civ.P. 12(b)(6). Finally the district court dismissed Villasenor's remaining state law claim because all of the federal claims were dismissed. Villasenor challenges the dismissal of Counts I, II, & IV.

## II.

### A. Villasenor's Count IV
### Validity of the Early Termination Charge under State law

■ The early termination clause in Mr. Villasenor's lease provides that if the lessee terminates the lease prior to its scheduled expiration he will be liable for "liquidated damages" in an amount equal to:

1. The "total of the Total Unpaid Monthly Payments,"

plus

2. the "estimated end of term wholesale value,"

plus

3. excess mileage charges ($.08 for each mile in excess of 1250 miles per month),

plus

4. attorneys fees incurred by Chrysler in enforcing the lease,

minus

5. the net amount Chrysler receives from the sale of the car and any insurance payments that are not used to repair or replace the car.

Among other things, Villasenor objects to the provision calling for an immediate acceleration of all monthly payments due without any discount to present value (i.e. a reduction by the amount of the unearned finance charge). Specifically, Villasenor claims that such an early termination charge amounts to an unenforceable penalty under Illinois law. Although Villasenor has not yet terminated his lease and has not alleged that he intends to terminate it, he nevertheless seeks a "declaration as to the consequences of early termination and of his potential liability under the termination clause." We conclude that Villasenor lacks standing to assert this claim.

Article III of the Constitution dictates that federal courts may only adjudicate actual "cases" or "controversies." *Allen v. Wright,* 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984).[1] In this case Villasenor is seeking a declaratory judgement that the early termination provision violates Illinois law. "The case-or-controversy requirement

---

1. Although this cause of action arises under state law, the federal standing requirements of Article III still apply. *See Phillips Petroleum Co. v.* *Schutts,* 472 U.S. 797, 804, 105 S.Ct. 2965, 2970, 86 L.Ed.2d 628 (1985).

of Article III applies with equal force to actions for declaratory judgements as it does to actions seeking traditional coercive relief." *Foster v. Center Township of LaPorte County,* 798 F.2d 237, 242 (7th Cir.1986). Thus, "to demonstrate standing for a declaratory judgement, [Villasenor] must [allege] ... that [he] has sustained, or is in immediate danger of sustaining, a direct injury as a result of the defendant['s] conduct...." *Id.* Furthermore "the alleged harm must be **actual or imminent,** not 'conjectural' or 'hypothetical.'" *Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990) (emphasis added).

Even a brief review of the facts of this case demonstrates that Villasenor has not met the Article III requirements of presenting a justiciable case or controversy. He has not terminated his lease; therefore, the early termination clause has not been applied to him and he has suffered no harm from it. Furthermore, and more damaging to his case, he has not even alleged that he now has, or will ever have, any desire whatsoever to terminate his lease. The absence of an allegation that Villasenor at least intends to terminate his lease deprives him of standing. The Supreme Court has recently reached a similar result in *Lewis v. Continental Bank Corp.,* 494 U.S. 472, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990). In that case, Continental sought to challenge the constitutionality of a Florida statute as it applied to uninsured banks. Continental had not applied for an uninsured bank, and had not even alleged that it intended to apply for one. Therefore, the court held that Continental's challenge to the constitutionality of the statute "amount[ed] to a request for advice as to 'what the law would be upon a hypothetical state of facts[.]'" *Id.* at 479, 110 S.Ct. at 1254–55 (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937)). Villasenor is in the same position as Continental. He has merely asked this court to determine what would happen to him if he did decide to terminate his lease at some unknown time in the future. He has not alleged a direct injury, nor has he alleged any threatened injury. *See Foster,* 798 F.2d at 242. He has presented a case about a pure hypothetical injury " 'that may

not occur as anticipated, or indeed may not occur at all.'" *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580–81, 105 S.Ct. 3325, 3332–33, 87 L.Ed.2d 409 (1985). Because he has not even established a threat of imminent harm, we conclude that he has no standing to seek a declaratory judgement regarding the validity or effect of the early termination clause under Illinois law. *See Whitmore,* 495 U.S. at 155, 110 S.Ct. at 1723.

### B. Villasenor's Count I
### Validity of the Early Termination Clause under Federal Law

■ Villasenor also claims that the early termination provision in his lease violates 15 U.S.C. § 1667b(b). That statute provides that lessors may specify "penalties or other charges for delinquency, default, or early termination ... but only at an amount which is reasonable in the light of the anticipated or actual harm [to the lessor]." Villasenor contends that requiring an acceleration of all payments due, without any discount reflecting the time value of money, will always produce unreasonably large penalties and windfalls for the lessor. Therefore he urges this court to adopt a rule that the early termination clause in his lease necessarily violates 15 U.S.C. § 1667b(b). The district court dismissed this count stating that Villasenor had no standing to raise this claim because he had not yet terminated his lease. Villasenor argues on appeal the district court's dismissal of this count was improper because the statute itself grants standing to redress violations of it. Even assuming that he is correct in this regard, we hold that this count should nonetheless be dismissed because he has failed to state a valid claim for relief under the statute.

The language of the statute makes clear that the charges are enforceable if they are reasonable in the light of the anticipated or **actual** harm to the lessor. This language was borrowed directly from the Restatement of Contracts (Second) § 356. This court has previously held, interpreting § 356, that there are two relevant time periods to examine when considering the enforceability of liquidated damages clauses of this type: 1) the time of contracting and 2) the time of the

injury. *Yockey v. Horn,* 880 F.2d 945, 953 (7th Cir.1989). "If at *either* time the estimate is reasonable, the clause will be enforced." *Id.*

A plaintiff states a valid cause of action if he can prove any "set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). As applied to the claim under this particular statute, there must be some set of facts that demonstrate the early termination charge is unreasonable in light of the anticipated and actual harm. We will assume without deciding that an early termination charge that accelerates payments that would otherwise be paid over time, without reducing them to present value, is unreasonable in light of the anticipated harm that would befall the lessor in the event of default or termination. That, however, is only one half of the test in the statute; we must also compare the charge to the lessor's actual harm. In this case we do not have the ability to determine if the early termination charge is reasonable in the light of the **actual** harm to the lessor (i.e. at the time of breach or injury) because Villasenor has not yet terminated his lease agreement. Thus there is no conceivable means by which he could prove that the early termination charge is unreasonable in light of the actual harm to Chrysler; one cannot prove facts about the specific details and consequences of an event that has not yet occurred. For that reason, Villasenor has failed to state a cause of action for relief under 15 U.S.C. § 1667b(b) and we remand to the district court to dismiss this count pursuant to Fed.R.Civ.P. 12(b)(6).

### C. Villasenor's Count II Disclosure Violations

The Consumer Leasing Act requires lessors to make certain disclosures in each consumer ·lease. 15 U.S.C. § 1667a(1)–(11). Villasenor argues that Chrysler has violated this statute in two ways. First he contends that Chrysler does not disclose the complete formula they use for calculating early termination charges, in violation of 15 U.S.C.

§ 1667a(11). Second he argues that Chrysler has failed to identify any warranties that the manufacturer provides to the lessee, in violation of 15 U.S.C. § 1667a(6). We find that Villasenor has stated a valid claim for violations of both sections.

### 1. Disclosure of the Early Termination Charges

 Every lessor involved in a consumer lease must provide the lessee a statement describing "the amount or method of determining any penalty or other charge for delinquency, default, late payments, or early termination." 15 U.S.C. § 1667a(11).[2] Chrysler in fact discloses a formula for determining their early termination charge. The formula, as disclosed, does not discount the accelerated lease payments to present value, nor does it indicate that the lessor will provide a reduction in the penalty by the amount of any unearned finance charges. In the district court Villasenor argued that this termination charge was in excess of what Chrysler was legally entitled to collect. He alleged that disclosing a formula that produces an unlawful penalty amounted to a violation of the disclosure requirement. The district court correctly dismissed that claim. There is no disclosure violation if a lessor discloses an accurate, albeit unenforceable, formula.

On appeal Villasenor's argument regarding this particular disclosure claim is very different. He now contends that, in practice, Chrysler regularly uses a formula for determining the early termination charge that is different from the one they disclose in their leases. Specifically, he claims that after going through the calculation as described in the lease, Chrysler then reduces the "penalty" by the amount of any unearned finance charges. He accurately notes that Chrysler has stated in its brief that "after a lease termination, [Chrysler] does make an 'adjustment to account for the acceleration.'" (Appellant's Brief at 21). Whether Chrysler, as a rule, provides an adjustment to the early termination charge is a question of fact that

---

**2.** The regulations relating to this statute, known as "Regulation M" echo this requirement by mandating that the lessor disclose "the amount or method of determining the amount of any penalty or other charge for early termination." 12 C.F.R. § 213.4(g)(12) (1993).

we will leave to the district court. We do note, however, that failing to disclose any portion of the formula that a lessor actually uses for calculating the early termination charge, will give rise to a technical violation of the disclosure provision found in 15 U.S.C. § 1667a(11) and Regulation M. Therefore, by claiming that Chrysler provides an unearned finance charge reduction, but does not disclose that as part of their formula, Villasenor has presented a claim upon which relief can be granted and dismissal is improper.[3]

Chrysler makes three arguments to support its claim that Villasenor has not stated a valid cause of action for this disclosure violation. First, it contends that because the ultimate penalty will be lower than the lease allows, the lessees are not harmed by the failure to disclose the finance charge reduction. This simply is untrue. When a lessee begins to consider whether he should terminate his lease early, he will most certainly consider what penalties he will face for the early termination. These penalties are detailed in the lease. If the formula disclosed is inaccurate, either too high or too low, the lessee will be unable to assess the true costs of termination and unable to make a truly rational decision. If, as alleged in this case, the lease states a formula that produces an early termination charge that is in fact much larger than the actual charge that will be imposed, the lessee may be unnecessarily induced to remain in an otherwise unfavorable lease.

Consider for example a lessee who is dissatisfied with his lease and determines that

he is willing to pay $500 to terminate it. He examines the formula in the lease which indicates that the charge for termination will be $700. As a result, the lessee decides to remain in the lease. Unbeknownst to the lessee, the lessor intends on offering a reduction of $250. The lessee has based a decision on incomplete information and in fact has made the wrong decision. We note that in such a situation, the lessee has been harmed by the lessor's policy, even though the penalty, if imposed, would have been less that than expected. The harm lies in the lessee being induced to make an irrational decision because he does not possess a full understanding of the true costs of his actions.

■ Chrysler next argues that Villasenor has made this argument, that the actual formula for determining the penalty differs from what is stated in the lease, for the first time in his reply brief, thus, he has waived it. In most circumstances a litigant who fails to raise an argument until his reply brief will be deemed to have waived that argument. *Wilson v. O'Leary*, 895 F.2d 378, 384 (7th Cir. 1990). This case is before us, however, on a motion for dismissal pursuant to Rule 12(b)(6). The inquiry we are faced with is whether the plaintiff can prove any set of facts to support his allegation. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957). This court has held that when reviewing Rule 12(b)6) motions, we will consider new factual allegations raised for the first time on appeal provided they are consistent with the complaint. *See Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 963–64 (7th Cir.1992) (holding

---

**3.** We find it useful to distinguish this case from our recent holding in *Price v. FCC Nat. Bank*, 4 F.3d 472 (7th Cir.1993). In *Price*, FCC National Bank had issued credit cards. It stated in its credit card agreements that a finance charge would be imposed if payment was not received within twenty days of the billing date. In practice, however, FCC had a policy of forbearing from imposing that finance charge if customers paid within twenty-five days. The plaintiffs argued that this undisclosed policy violated the Truth in Lending Act (TILA). We held that no violation had occurred. The pertinent provision of the TILA stated that issuers of credit cards must disclose to their customers

[t]he date by which or the period (if any) within which, payment must be made to avoid

additional finance charges, **except that the creditor may, at [its] election and without disclosure, impose no such finance charge if payment is received after such date or the expiration of such period.**

15 U.S.C. § 1637(b)(9) (emphasis added). In finding that FCC's policy did not violate the statute we noted that "[t]he 'except' clause in § 1637(b)(9) expressly permits such a policy of forbearance." *Price*, 4 F.3d at 474. The operative statutes in the present case contain no such exception; therefore, *Price* does not foreclose our holding and Chrysler Credit may indeed be liable for failing to disclose its policy of providing a finance charge reduction.

that a plaintiff may attempt to survive a Rule 12(b)(6) motion by adding essential new facts in a brief on appeal); *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992) (holding that a plaintiff may present unsubstantiated factual allegations on appeal, "provided [they are] consistent with the complaint, to show that the complaint should not have been dismissed."). "This rule is necessary to give plaintiffs the benefit of the broad standard for surviving a Rule 12(b)(6) motion. . . ." *Dawson*, 977 F.2d at 372. Villasenor's allegation that Chrysler uses a formula different from the one it discloses is consistent with the allegation in the complaint that Chrysler violated the disclosure statute. Therefore, Villasenor has not waived his arguments on this claim.

Finally Chrysler argues that by providing a reduction in the penalty, they are attempting to treat the lessee more favorably than the lease permits, and that such favorable treatment should not be considered a violation of the disclosure statutes. Chrysler argues that our ruling today would frustrate their ability to forbear from imposing early termination charges in certain "hardship" cases where the lessee is unable to pay. Our ruling will not have that effect. Chrysler, and all other lessors, will always have the ability to forbear from imposing charges or to reduce charges on a case-by-case basis if they feel any particular lessee labors under a financial hardship. What they may not do, however, is maintain a practice of always calculating the early termination charge according to a certain formula while disclosing only a portion of that formula in the lease. Villasenor contends that the formula Chrysler always uses is different from the formula it discloses. If he is correct, Chrysler will be liable for a violation of the disclosure statutes.

### 2. Warranty Disclosures

■ In addition to the above requirements, the Consumer Leasing Act also requires that the lessor provide a "statement *identifying* all express warranties and guarantees made by the manufacturer. . . ." (em-

phasis added) 15 U.S.C. § 1667a(6). Chrysler's lease stated only that "[t]he vehicle *may* be subject to a separate written warranty from the manufacturer." (emphasis added). Villasenor alleged that this statement was insufficient to satisfy the mandate of the statute. The district court ruled that as a matter of law, this disclosure was sufficient because it "identif[ied] a 'separate written warranty from the manufacturer.'" *Highsmith v. Chrysler Credit Corp.*, 150 B.R. 997, 1005 (N.D.Ill.1993). It therefore dismissed Villasenor's claim. We find that the lease in this case squarely violates the disclosure requirement of 15 U.S.C. § 1667a(6).

The statute plainly requires the lessor to "identify" the manufacturer's warranties. This requires a statement that there are or are not warranties from the manufacturer. The statement in the Chrysler lease, that there "may be" warranties, gives the lessee no information whatsoever. It is not a disclosure at all but an extraneous statement of the obvious—there may be warranties or there may not be. We conclude that as a matter of law this statement is insufficient to satisfy the statutory mandate. We therefore reverse the district court's ruling on this point.

### D. Highsmiths' Count V
### Illinois Consumer Fraud Act Claim

The Highsmiths allege that Chrysler has violated the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1–505/12,[4] because it "imposes unreasonable termination charges" and "misrepresents the lessee's rights and responsibilities." The district court concluded that the Highsmiths' claim was time-barred because they did not bring it within three years of the date of their lease. The Highsmiths argue that the limitations period began running only after they suffered pecuniary damage as a result of Chrysler's conduct. Chrysler contends that the district court was correct in its ruling on the limitations period and, in the alternative,

---

**4.** Additionally, the Highsmiths, as well as Mr. Villasenor, allege that the lease provisions violate the Michigan Consumer Protection Act, Mich. Comp.Laws §§ 445.901–922 (1989). The district court dismissed these claims as against all plaintiffs. For the reasons stated in the district court opinion, 150 B.R. 997, 1007–08 (N.D.Ill.1993), we affirm that ruling.

that the Highsmiths' allegations fail to state a cause of action under the Consumer Fraud Act.

Initially we note that the allegations in this Count are indeed sufficient to state a cause of action under the Illinois Consumer Fraud Act. That act states that "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to ... **misrepresentation** ... are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." (emphasis added) 815 ILCS 505/2. The Highsmiths' complaint specifically alleges that Chrysler has made misrepresentations regarding the rights and responsibilities of lessees. This allegation plainly invokes the statute and thus states a valid cause of action.

The Highsmiths argue that the district court erred by holding that their claim was time-barred. The Illinois Consumer Fraud Act provides that a plaintiff must bring a claim for violation of the act within three years of the date the cause of action accrues. 815 ILCS 505/10a(e). The dispute in this case revolves around when the Highsmiths' cause of action accrued. Chrysler contends that the cause of action accrued on March 10, 1987, the date the Highsmiths entered into their lease. The Highsmiths respond by saying they suffered no pecuniary harm until Chrysler actually imposed liability upon them on April 25, 1989; therefore, the cause of action could not have accrued until that date. They filed this action in October of 1991.

The district court concluded that the cause of action accrued on March 10, 1987, the date the Highsmiths signed the lease agreement. It based its ruling on *Van Gessel v. Folds,* 210 Ill.App.3d 403, 155 Ill.Dec. 141, 569 N.E.2d 141 (1st Dist.1991). In that case the plaintiffs purchased a home in November of 1980 that unbeknownst to them had been damaged by fire. The defendants-sellers had concealed the fire damage. The plaintiffs did not discover the damage until January of 1983. The Illinois Appellate Court nonetheless held that the cause of action for fraud under the Consumer Fraud Act accrued in

November of 1980 when they purchased the house. *Id.* at 408, 155 Ill.Dec. 141, 569 N.E.2d 141. Therefore, the regular limitations period would end three years from that date (November 1983). In that case, because the plaintiffs did not discover the fire damage for quite some time, an issue arose whether that delayed discovery tolled the statute of limitations. The court noted that when a plaintiff

> discovers his cause of action or injuries within the limitations period and still has a reasonable time in which to file suit, then the discovery rule does not apply and the plaintiff must file suit within the normal limitations period.

*Id.* at 407–08, 155 Ill.Dec. 141, 569 N.E.2d 141 citing *Anderson v. Wagner,* 79 Ill.2d 295, 37 Ill.Dec. 558, 402 N.E.2d 560 (Ill.1979).

The district court found that the Highsmiths discovered their cause of action with enough time remaining in the normal limitations period to file suit. Therefore, it held, under *Van Gessel,* that they should have brought their action by March 10, 1990. Because they failed to do this, their claim was time-barred.

■ We now reverse the district court and hold that a cause of action under the Consumer Fraud Act accrues when the plaintiff "knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Knox College v. Celotex Corp.,* 88 Ill.2d 407, 415, 58 Ill.Dec. 725, 729, 430 N.E.2d 976, 980 (Ill. 1981); *Midland Management Corp. v. Computer Consoles Inc.,* 837 F.Supp. 886 (N.D.Ill. 1993) (Posner, J., sitting by designation). *Van Gessel* purports to carve an exception to this rule—if one discovers a cause of action within the normal limitations period and still has a reasonable amount of time remaining in which to file suit, the "discovery rule" in *Knox* will not apply. As the district court noted in *Midland,* when it declined to follow the *Van Gessel* exception, the only effect of the "exception" is to "penalize plaintiffs who discover their CFA causes of action sooner rather than later." *Midland,* 837 F.Supp. at 887.[5] Perhaps because it produces such il-

---

5. The *Midland* decision was issued one week prior to oral argument in this case. Neither

logical results, the *Van Gessel* exception is not the unequivocal rule of law in Illinois. In fact, no Illinois court has specifically followed the rule in *Van Gessel*.[6] Several cases do, however, apply the discovery rule to Consumer Fraud Act claims without regard to *Van Gessel.* See, e.g., *Bradley v. Alpine Constr.*, 224 Ill.App.3d 432, 166 Ill.Dec. 695, 586 N.E.2d 653 (1st Dist.1991); *Sommer v. United Sav. Life Ins. Co.*, 128 Ill.App.3d 808, 84 Ill.Dec. 77, 471 N.E.2d 606 (2d Dist.1984).

When deciding questions of Illinois law, "we must apply the state law that would be applied in this context by the Illinois Supreme Court." *Green v. J.C. Penney Auto Ins. Co.*, 806 F.2d 759, 761 (7th Cir.1986). The Illinois Supreme Court set forth the rule in *Knox College*, but has not recognized the *Van Gessel* exception.[7] Moreover, because *Van Gessel* has not been followed by other Illinois courts, and at least one federal court applying Illinois law explicitly declined to follow it (*Midland*, 837 F.Supp. 886), we do not believe the Illinois Supreme Court would follow it today. Therefore, we hold that the Highsmiths' Consumer Fraud Act cause of action accrued when they knew or reasonably should have known that Chrysler had misrepresented their liability. This is a factual question for the district court to resolve. Because the Highsmiths filed suit in October of 1991, if they discovered the alleged misrepresentations after October of 1988, their claim is not barred by the three-year limitations period.

### III.

Mr. Villasenor lacks standing to seek a declaratory judgement that the early termination provision in his lease violates Illinois law. Furthermore his allegations that the early termination charge is unreasonable and violative of the Consumer Leasing Act fail to state a claim upon which relief can be granted because he has not yet terminated his lease. He does, however, have valid claims for disclosure violations under the Consumer Leasing Act: 1) his allegation that Chrysler does not disclose the complete formula for determining the early termination charge is sufficient to raise a valid claim for violation of 15 U.S.C. § 1667a(11) and 2) Chrysler's warranty disclosure in its lease is insufficient, as a matter of law, to satisfy the requirements of 15 U.S.C. § 1667a(6). Therefore, Villasenor will be allowed to pursue Count II of his amended complaint in the district court. In addition, because he has stated valid federal law claims, the district court must reconsider its discretionary dismissal of the Villasenor's remaining state law claim under the Illinois Consumer Fraud Act. Finally, the district court must determine when the Highsmiths knew or reasonably should have known that Chrysler had allegedly misrepresented their rights and liabilities—the Consumer Fraud Act cause of action accrues on that date. The decision of the district court is

AFFIRMED in part, REVERSED in part, and REMANDED.

party, however, addressed *Midland* during those arguments.

6. One Illinois appellate court had followed *Van Gessel* with serious reservations about its validity. That opinion, however, was withdrawn. See *Hermitage Corp. v. Contractors Adjustment Co.*, 1993 WL 251643 (Ill.App.Ct., 1st Dist. July 9, 1993).

7. The *Van Gessel* court did cite an Illinois Supreme Court case, *Anderson v. Wagner*, 79 Ill.2d 295, 37 Ill.Dec. 558, 402 N.E.2d 560 (Ill.1979), to support the creation of this exception. *Anderson* does not, however, provide any such support. In *Anderson*, the court held that one could not invoke the "fraudulent concealment" rule to toll an otherwise applicable statute of limitations if he discovered the fraudulent concealment with a reasonable time remaining in that limitations period (i.e. in this situation one may not use the fraudulent concealment rule to extend an applicable limitations period). *Id.* 37 Ill.Dec. at 571, 402 N.E.2d at 573. This simply is not an exception to the general rule regarding when a cause of action accrues. The Highsmiths are not arguing that the stated limitations period should be extended because of fraudulent concealment or any other tolling rule. Rather, they are arguing that their cause of action simply did not accrue, and the applicable limitations period did not begin to run before a certain date. For that reason, *Anderson* is irrelevant.