124 F.3d 204
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Kalonji Rad JIHAD, Plaintiff-Appellant,
v.
Charles E. WRIGHT, Step Huckins, Dawn MacMillan, and M.
Levenhagen,[1] Defendants-Appellees.
 No. 96-1033.
 United States Court of Appeals, Seventh Circuit.
 Submitted August 13, 1997.*
Decided Aug. 14, 1997.
 
 1
 Appeal from the United States District Court for the Northern District of Indiana, South Bend Division.
 
 
 2
 Before COFFEY, FLAUM, and KANNE, Circuit Judges
 
 ORDER
 
 3
 After being transferred to the Maximum Control Complex ("MCC") in Westville, Indiana, Kalonji Raid Nasih Jihad, an inmate, brought suit pro se against the defendants for violating his First and Eighth Amendment rights, as protected by the Fourteenth Amendment and 42 U.S.C. § 1983. He also claimed that the defendants' conduct was contrary to the prison's rules and regulations and thus a violation of due process. The district court granted the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), concluding that Jihad had failed to set forth a claim upon which it could grant relief.[2] We affirm.
 
 
 4
 We review the dismissal of Jihad's complaint de novo, accepting his allegations as true and drawing all reasonable inferences in his favor. See Spiegel v. Rabinovitz, No. 96-2150, slip op. at 4 (7th Cir. July 28, 1997). We will affirm the dismissal of a complaint if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. (citations omitted). Jihad alleged that on October 26, 1994 he was transferred to the MCC from the Indiana State Prison. Upon his arrival, he was placed in a "dry-cell" for 72 hours pursuant to defendant Wright's order and an MCC policy designed to prevent transferees from internally smuggling in contraband. An inmate in a "dry-cell" does not have free access to running water and is not allowed to flush his toilet. Instead, correctional officers are responsible for turning on the water and flushing the inmate's toilet every four hours. Furthermore, correctional officers are responsible for providing personal hygiene items to these dry-cell inmates once a day. Jihad complained that he was denied running water and any personal hygiene items for the duration of his dry-cell occupancy[3] and that flushing the toilet every four hours was not enough to rid his small, closed cell from the foul odor emanating from the waste-filled toilet and his uncleansed hands--soiled from the defendants' alleged failure to provide him with a sufficient amount of toilet tissue or to allow him to wash his hands. He also complained that he developed a "cyst" from the accumulated bacteria. According to Jihad, being subjected to these dry-cell conditions constituted cruel and unusual punishment in violation of the Eighth Amendment.
 
 
 5
 A cause of action under § 1983 has two elements: (1) that the defendants acted under color of state law; and (2) that their actions deprived the plaintiff of a right secured by the Constitution or laws of the United States. See West v. Atkins, 487 U.S. 42, 47 (1988); Parrart v. Taylor, 451 U.S. 527, 535 (1981); Lanigan v. Village of East Hazel Crest, Ill., 110 F.3d 467, 468 (7th Cir.1997). This first element is sufficiently met here as the defendants are alleged to be liable by reason of their duties and positions as IDOC employees.[4] We thus proceed to consider whether Jihad sufficiently alleged that the defendant subjected him to conditions of confinement that violate the Eighth Amendment.
 
 
 6
 We begin to judge the validity of Jihad's complaint by reference to the specific constitutional standards which govern the Eighth Amendment. See Spiegel, slip op. at 5. To state an Eighth Amendment claim, a prisoner must allege that prison officials were deliberately indifferent to an excessive risk to inmate health or safety. See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1977 (1994). The use of dry cells is for the purpose of discovering and securing any contraband smuggled by ingestion into the prison. See United States v. Oakey, 731 F.Supp. 1363, 1364-66 (S.D.Ind.1990). Jihad does not allege that he was held in the dry cell for any other reason than to be monitored for ingested contraband. The period of 72 hours (or 3 days) of confinement in the dry cell is consistent with that purpose. See id. Because Jihad was confined to the dry cell to serve a legitimate penological interest and not for the purpose of punishment, the culpability component of deliberate indifference analysis is clearly lacking. See Farmer, 114 S.Ct. at 1979.
 
 
 7
 But Jihad's complaint is not based only on the prison's use of the dry-cell. Rather, he argues that he was denied even the minimal amount of running water and personal hygiene items that dry-cell inmates were supposed to receive. Furthermore, he alleged that he complained about these violations of the dry-cell policy to the defendants to no avail. Thus, he argues that he sufficiently alleged that the defendants were deliberately indifferent to his conditions of confinement. Accepting his allegations as true and viewing the facts in his favor, we thus consider whether denying Jihad the ability to wash his hands or to attend to his personal hygiene needs for three days constitutes an Eighth Amendment violation.[5]
 
 
 8
 In order to violate the Constitution, deprivations must be "unquestioned and serious" and contrary to "the minimal civilized measure of life's necessities." See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Mere discomfort and inconvenience do not implicate the Constitution. See Caldwell v. Miller, 790 F.2d 589, 600-01 (7th Cir.1986). In Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir.1988), this court found that ten days in a segregation unit without toilet paper, toothbrush or toothpaste, and in a "filthy, roach-infested cell" did not constitute cruel and unusual punishment. Moreover, while the conditions incident to preserving all bodily excrement for examination are undesirable, it is well-settled that conditions which are temporary and do not result in physical harm are not actionable under the Eighth Amendment. See id at 1235; Johnson v. Pelker, 891 F.2d 136, 138-39 (7th Cir.1989). Notably, Jihad did not allege that he could not use the toilet or obtain drinking water. He alleged only discomfort from the smell of the unflushed toilet which was flushed every four hours by prison officers, and that he developed a "cyst" from not being able to wash himself. We conclude that the harm he allegedly endured is not sufficiently serious to support a claim under the Eighth Amendment.
 
 
 9
 Jihad's First Amendment argument is that he was denied religious freedom by the defendants' failure to provide him with a pork-free diet despite his being a Muslim who eats only vegetarian foods. Specifically, he alleged that his "constitutional rights were violated when [he] was served pork food trays for three days in the dry cell, and after the dry cell, pork food trays were given for two weeks." He further alleged that the denial of his "right to a religious diet" caused him to suffer "hunger, stomach pains, hunger contractions, headaches, and emotional changes of anger and hate." The district court found that the two-week delay in accommodating Jihad's diet preferences was "de minimus" and not a violation of the First Amendment.
 
 
 10
 On appeal, Jihad now argues that he was denied a pork-free diet for "thirty days." This court has held that when reviewing Rule 12(bX6) dismissals, we will consider new factual allegations raised for the first time on appeal provided they are consistent with the complaint. See Highsmith v. Chrysler Credit Corp., 18 F.3d 434, 439 (7th Cir.1994). But it is a stretch to conclude that thirty days is consistent with two weeks. In any event, Jihad has not stated a claim against the defendants. In his appellate brief, Jihad alleged that other inmates received food trays of their choice within two or three days, but that he "was made to suffer ... for 30 days to receive a non-pork vegetarian trays." (Jihad's Br. at 17.). Notably, he did not allege how any of the defendants were personally responsible for making him suffer this alleged deprivation of his constitutional right. Hence, the defendants cannot be liable under § 1983. See Gentry, 65 F.3d at 560; Rascon, 803 F.2d at 273.
 
 
 11
 Accordingly, we AFFIRM the district court's judgment dismissing Jihad's complaint.
 
 
 
 [1]
 The defendants are all present and former employees of the Indiana Department of Corrections ("IDOC"). Appellee's Br. at 2
 
 
 *
 After an examination of the record and the briefs, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f)
 
 
 [2]
 The defendants also asserted in the motion to dismiss that they were entitled to qualified immunity
 
 
 [3]
 Jihad's complaint alleged that he was forced to lived in dry-cell "without soap, toothbrush, toothpaste, comb, toilet paper, and no water"). (R. at 3, Complaint pp 9, 14.)
 
 
 [4]
 Of course, Jihad must also allege personal responsibility on the part of each of the defendants. See, e.g., See Gentry v. Duckworth, 65 F.3d 555, 560 (7th Cir.1995); Rascon v. Hardiman, 803 F.2d 269, 273 (7th Cir.1986). Jihad argues that the defendants knew about his conditions in the dry-cell and yet did nothing, and therefore, were responsible for the alleged constitutional deprivation. Even assuming that he satisfies the personal responsibility component of a § 1983 action, Jihad's complaint fails to state a violation of the Eighth Amendment
 
 
 [5]
 Of course, violations of prison policy or state law do not constitute a violation of due process. See Parratt, 451 U.S. at 535. Thus, we reject Jihad's argument that the district court erred in dismissing his due process claim based on the alleged violations of the MCC's dry-cell policy